**SCHULMAN**BHATTACHARYA

The Clark Building | 7500 Old Georgetown Rd, Ste 901, Bethesda, MD 20814 | 240.356.8550

**JEFFREY S. GAVENMAN**
direct dial 240.356.8553   email jgavenman@schulmanbh.com

December 28, 2020

**Via ECF and Electronic Mail**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re: *Cheng v. Guo*, Case No. 1:20-cv-05678-KPF

Dear Judge Failla:

      We represent Defendant Wengui Guo ("Mr. Guo") in the above-captioned case. Pursuant to Your Honor's Individual Rule 3.C and Paragraph 10 of the Case Management Plan and Scheduling Order ("CMO"), Mr. Guo writes to request an informal conference regarding multiple issues with Plaintiff Logan Cheng's ("Mr. Cheng") First Requests for Production of Documents ("RFP") and Interrogatories (collectively, the "Discovery Requests"). As explained below, the Discovery Requests are massively overbroad and seek information that is irrelevant, sensitive, confidential, or all of the above. At the same time, Mr. Cheng has refused to enter into a confidentiality agreement—or even discuss the grounds for his objections. Mr. Guo brought these issues to Mr. Cheng's attention, but Mr. Cheng refused to rectify any of them. Mr. Guo thus requests an informal conference to resolve these issues. To the extent any issues remain unresolved, Mr. Guo also requests this Court's permission to file a motion seeking to preclude Mr. Cheng from pursuing discovery as a result of his abusive litigation tactics or, in the alternative, to strike Mr. Cheng's improper Discovery Requests and for a protective order under Fed. R. Civ. P. 26.

      As a September 3, 2020 "settlement" letter from his counsel confirms, Mr. Cheng never intended to focus on the issues that actually matter in this case.[1] Rather, his goal has always been to run up Mr. Guo's legal fees with the goal of extracting a financial windfall from Mr. Guo. To that end, in his September 3 letter, Mr. Cheng's counsel stated that Mr. Cheng was "willing" to resolve this dispute—which only includes items that are ancillary to a $196,940.39 judgment—for no less than $5 million dollars. *See* Ex. A. Mr. Cheng's counsel also noted that a jury had awarded $50 million in punitive damages to a victim of sexual battery and suggested that Mr. Guo's "litigation abuse" likely merited a similar award to Mr. Cheng. *See id.* Mr. Guo declined to pay Mr. Cheng's extortionate settlement demand. In response, Mr. Cheng only doubled down.

---

[1] A copy of this letter is appended as Exhibit A (enclosure omitted). Mr. Guo would note that, although the letter is labeled "confidential settlement communication," the contents of the letter are not confidential. The letter was publicly filed by Mr. Cheng in Nevada state court.

Despite the limited nature of this case and the modest amount in controversy, on December 7, 2020, Mr. Cheng served Mr. Guo with Interrogatories and no fewer than *one hundred and forty-four* (144) RFPs.[2] The Discovery Requests largely ignore the definitions and mandatory rules of construction set forth in this Court's Local Rules. The terms "identify," "document," "communication," and "concerning" are all improperly defined. *Compare* Exs. B & C *with* Loc. R. 26.3(c)-(d). For instance, the Discovery Requests define "identify" in reference to a natural person to include that person's "residential address, work address, home telephone number, work telephone number, cellular telephone number, work email address, and personal email address." Exs. B & C. The Local Rules define "identify" with respect to a natural person to include only a "present or last known address" and "present or last known place of employment." Loc. R. 26.3(c)(3). In sum, Mr. Cheng is demanding, via his noncompliant, overbroad definitions, immaterial personal information to which he is simply not entitled.

The RFPs seek to uncover more of the same information, although that is far from their only problem. The sheer number of Mr. Cheng's RFPs is grossly out of proportion to the needs of this case. So is the information Mr. Cheng requests, *i.e.*, every single document bearing on nearly every one of Mr. Guo's allegations in his Nevada Complaint (the "SAC"). *See* Ex. B, Nos. 15, 49-134. To the extent some documents "supporting" Mr. Guo's allegations in the SAC might be relevant to some of Mr. Cheng's claims, as even a cursory review of the SAC (ECF No. 1-1) confirms, most of the documents Mr. Cheng seeks are not. For instance, Mr. Cheng demands "any and all" documents supporting Mr. Guo's allegations regarding: his actions against the Chinese Communist Party; his May 28, 1989 arrest in Tiananmen Square, when "two drunken policemen raided [his] office"; his "parents," who "are in their eighties and still live in China"; and two of his brothers, who "are currently imprisoned in China." Ex. B, Nos. 50-51, 73-74, 76-77. Mr. Guo's prior assertions regarding his political background and family members have absolutely nothing to do with this case. Nonetheless, Mr. Cheng seeks *"any and all"* documents supporting them. Ex. B, Nos. 73-104 (emphasis added). Mr. Cheng also demands "any and all documents" supporting Mr. Guo's allegations regarding Mr. Yong's intent, which are equally irrelevant, along with Mr. Guo's medical and mental health records, which are even more so. Ex. B, Nos. 65-70, 114-117, 135-137. And if Mr. Guo's financial information might become relevant to Mr. Cheng's claim for punitive damages at some point, the vast swaths of Mr. Guo's personal and business financial information Mr. Cheng seeks is wholly improper, particularly at this early stage before Mr. Cheng has demonstrated his entitlement to such damages. Among other things, Mr. Cheng demands: all federal and state tax returns from 2015 through the present; "all documents" "relating to any business entity" in which Mr. Guo has "an ownership interest"; and "all documents relating to any transfer of over $500 made to or for [Mr. Guo] from December 1, 2019, to present." Ex. B, Nos. 3, 6, 11. These requests are overbroad and unduly burdensome on their face. *See* Fed. R. Civ. P. 26(b)(1). Since they also implicate information that is "presumptively confidential or cloaked with a qualified immunity," *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. July 21, 2006), a confidentiality agreement is plainly necessary. *See Greer v. Carlson*, No. 120CV05484LTSSDA, 2020 WL 6064167, at *7 (S.D.N.Y. Oct. 14, 2020).

---

[2] Copies of the RFPs and Interrogatories are appended as Exhibits B & C, respectively.

Although we had previously circulated a draft confidentiality agreement via email, as of December 21, 2020, Mr. Cheng had still refused to enter into such an agreement—or even discuss the reasons for his refusal.³ To that end, on December 21, 2020, we sent Mr. Cheng's counsel a letter outlining all of the aforementioned issues with the Discovery Requests and reiterating that a protective order was necessary (the "Discovery Letter").⁴ Given the numerous problems with the Discovery Requests, we also proposed a solution: that Mr. Cheng circumscribe his Discovery Requests *and* either abandon his hunt for confidential information or simply agree to basic confidentiality protocols. In closing, we asked Mr. Cheng's counsel to advise as to their availability to meet and confer by telephone. For six days, Mr. Cheng's counsel declined to respond.

In follow-up emails, we reminded Mr. Cheng's counsel that Mr. Guo's responses were due on January 6, 2020 and an immediate response was needed, but offered multiple ways to give them additional time to assess the issues raised in the Discovery Letter if that was needed. *See* Ex. G. Today, the parties, through counsel, finally met and conferred by phone, but resolved only one issue: Mr. Cheng's counsel clarified that Mr. Cheng was not seeking any documents protected by attorney-client privilege. The parties thus agreed that Mr. Guo would not need to produce or identify such documents and that the problematic instructions regarding the demand for a privilege log could be ignored. *See* Loc. R. 26.2. The parties were unable to resolve any of the other issues raised in the Discovery Letter, however, and for one reason: Mr. Cheng refused to modify the Discovery Requests in any way, even to comply with the Local Rules. Once again, Mr. Cheng's counsel also refused to entertain any discussion of confidentiality protocols, although the CMO requires the parties to discuss them. To date, the only rationale Mr. Cheng's counsel has offered for Mr. Cheng's refusal to enter into a confidentiality agreement is that such an agreement would "hamstring [their] investigation and prosecution of the case." Ex. E. Mr. Cheng's counsel has declined to articulate how confining Mr. Guo's (and Mr. Cheng's) confidential information to this case would hinder Mr. Cheng's ability to investigate or prove his claims in the same case.

At this point, Mr. Cheng has had ample opportunity to engage with Mr. Guo regarding a confidentiality order. Mr. Cheng has also had three opportunities to serve reasonable, properly tailored discovery—before the December 7 deadline, in response to the Discovery Letter, and after the call. Mr. Cheng chose not to take them. In the meantime, Mr. Guo has been forced to expend substantial legal fees on these issues, just as Mr. Cheng intended. Mr. Guo respectfully requests an informal conference to discuss these issues and, should any issues remain unresolved, Mr. Guo requests permission to file a motion requesting that Mr. Cheng be precluded from pursuing discovery in this case due to his abusive, bad faith litigation tactics. *See, e.g.*, *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 386 (2d Cir. 1981) ("A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices."). In the alternative, as Mr. Guo will set forth in full in his motion, this Court should: order Mr. Cheng to seriously circumscribe his Discovery Requests; order Mr. Cheng to pay Mr. Guo's associated attorneys' fees; and enter a protective order in a substantially similar form to Exhibit D limiting Mr. Guo's sensitive information to the confines of this case.

---

³ *See* Exhibits D & E. Mr. Cheng's counsel never responded to the last email in Exhibit E.

⁴ A copy of this letter is attached as Exhibit F.

SCHULMAN**BHATTACHARYA**

Page | 4

                                  Respectfully submitted,

                                  /s/ Jeffrey S. Gavenman
                                  Jeffrey S. Gavenman

cc:     Jay M. Wolman (via ECF and email)
        Marc J. Randazza (via ECF and email)