**SCHULMANBHATTACHARYA**　　　The Clark Building | 7500 Old Georgetown Rd, Ste 901, Bethesda, MD 20814 | 240.356.8550

**JEFFREY S. GAVENMAN**
direct dial 240.356.8553　email jgavenman@schulmanbh.com

February 26, 2021

**Via ECF and Electronic Mail**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re: *Cheng v. Guo*, Case No. 1:20-cv-05678-KPF

Dear Judge Failla:

     We represent Defendant Wengui Guo ("Mr. Guo") in the above-captioned case. Pursuant to the Court's Order of January 21, 2021, as reflected on the docket and in the transcript of the discovery conference held that same day (the "Conference"),[1] we write to submit the parties' proposed protective order[2] and to apprise the Court of the points of disagreement between the parties regarding Plaintiff Logan Cheng's ("Mr. Cheng") Revised Requests for Production of Documents ("Revised RFPs" or "RRFPs").[3] On February 24, 2021, the parties, through counsel, met and conferred by phone and via email over the ensuing two days and agreed upon a proposed protective order. On the phone call, Mr. Cheng also agreed to modify or strike some of the Revised RFPs.[4] As explained below, however, the remaining Revised RFPs are still overbroad, unduly burdensome, and untethered to the needs of this case.

     As a preliminary matter, and as this Court is well-aware, Mr. Cheng initially propounded more than one hundred requests for production of documents ("Initial RFPs" or "RFPs"), many of which sought "any and all" documents, without time limitation, concerning Mr. Guo's allegations in Second Amended Complaint ("SAC"). ECF No. 26-2. During the Conference, the Court found that Mr. Cheng's RFPs were "disproportional." Tr. 21:5-6. The Court also issued guidance as to what proper requests should look like. As the Court clarified: "You should be focusing on the parts of the complaint that address Defendant Cheng and Defendant Yong and why it is their claims

---

[1] A copy of this transcript (cited as "Tr.") is available on the docket at ECF No. 29.

[2] A copy of the parties' proposed protective order is appended as Exhibit 1.

[3] A copy of the Revised RFPs is appended as Exhibit 2.

[4] Mr. Guo notes that Mr. Cheng agreed to strike or modify RRFP Nos. 7, 8, 20-21, 31-36, 41, 53-58, 82, 87, 103, 132-34, 138, & 140 during the meet and confer call. Mr. Guo reserves the right to interpose objections to all of the remaining Revised RFPs, along with the Revised Interrogatories, in the normal course.

were or were not defamation." Tr. 21:6-11. And as the Court explained, while Mr. Cheng could discover some information concerning "the merits, or not, of the Nevada lawsuit" and "Mr. Guo's wealth," "the way in which it has been presented is overbroad and disproportionate." Tr. 21:12-16. The same is true of many of the Revised RFPs.

Even taking the parties' agreed upon modifications into account, Mr. Cheng is still demanding that Mr. Guo respond to no fewer than **72 Revised RFPs**, the vast majority of which *still* demand "any and all" documents. *See* RRFP Nos. 15-23, 25-29, 31-36, 41-48, 52, 59-64, 70-72, 104-113, 118-124, 126-129, 131-134, & 141-144. Sixty-seven (67) of the Revised RFPs impose no time limitation whatsoever, which would be massively disproportionate in almost any conceivable case.[5] It is particularly disproportionate in this one, in which Mr. Cheng's only claims concern the merits of a lawsuit filed in Nevada on April 18, 2019. *See* ECF No. 1 & 1-1.[6]

These overbearing, disproportionate requests are particularly problematic in light of the manner in which Mr. Cheng responded to Mr. Guo's discovery requests. In Plaintiff Logan Cheng's Answers and Objections to Defendant Wengui Guo's (1) First Set of Interrogatories and (2) First Set of Requests for Production of Documents, rather than provide appropriate responses, Mr. Cheng lodged a series of inappropriate general objections (copies of which are compiled in Exhibit 3 appended hereto). It is well-established that such general objections are improper and violate Fed. R. Civ. P. 26, 33, and 34. *See Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017). Most problematic, however, is Mr. Cheng's sixth general objection to Mr. Guo's First Set of Interrogatories, which states: "Plaintiff further objects to all Interrogatories as it *is not a proper party to this lawsuit, and thus virtually none of the information requested is in Plaintiff's direct knowledge.*" Ex. 3, p. 2 (emphasis added). For the Plaintiff to claim that he is not a proper party to the lawsuit that *he* filed in this Court is certainly problematic and the fact that he deflects responding to Mr. Guo's discovery requests on that basis makes such claim pernicious. Further, it is particularly galling for Mr. Cheng to claim that he "is not a proper party to this lawsuit" when it helps him evade responding to discovery, then turn around and issue scores of overbroad, disproportionate document requests. If he is not a proper party to this lawsuit, as he stated in his verified interrogatory responses, then he is not entitled to take **_any_** discovery from Mr. Guo, much less the onerous discovery he has in fact propounded.

The Revised RFPs are otherwise problematic. Four of them seek information that is simply not the proper subject of discovery, *i.e.*, "any and all" documents supporting Mr. Guo's denial of various legal conclusions in the Complaint. *See* RRFP Nos. 18, 22, 23, & 25. Much of the information that Mr. Cheng seeks is also wholly irrelevant. Some of it is absurdly so. For instance, Mr. Cheng demands "any and all" documents supporting Mr. Guo's allegation in the SAC that Mr.

---

[5] Notably, when Mr. Guo asked Mr. Cheng to simply "admit [he] published the Twitter statements set forth in Paragraphs 18-23 of the SAC," and to admit that such Twitter statements "are still publicly accessible," Mr. Cheng objected to both requests as "irrelevant and disproportionate to the needs of this case." Although Mr. Cheng's objections are clearly misplaced, by Mr. Cheng's own assessment, the Revised RFPs are grossly disproportionate.

[6] The initial complaint was filed on August 9, 2018.

Cheng "owns and/or operates" a hotel on East Flamingo Road in Las Vegas, Nevada. RRFP No. 106. Mr. Cheng also demands documents "sufficient to describe" any "arrests and/or criminal convictions" of Mr. Guo. RRFP No. 73. None of this information has anything to do with this case.

Apart from seeking irrelevant information, many of Mr. Cheng's requests are vastly overbroad and impossible to answer. Perhaps most obtusely, Mr. Cheng demands documents identifying "any instance," from his birth to the present, in which Mr. Guo has "not been honest." RRFP No. 83. In multiple requests, Mr. Cheng demands "any and all" documents (without any time limitation) that support the proof of a negative (*i.e.*, that: Mr. Guo is not a swindler; Mr. Guo did not commit fraud, espionage, money laundering, forgery, and intimidation; and Mr. Guo is not in collusion with China's president). *See* RRFP Nos. 52, 59-64, 108-113, 124, 126 & 129. Such requests are improper, as asking for "any and all" proof of a negative has no limitations whatsoever; it is impossible to identify documents responsive to such requests and the requests are vastly overbroad in any case. Responding to these requests would force Mr. Guo to hunt through (and, in all likelihood, produce) essentially any documents in his possession. By way of example only, if Mr. Guo purchased a one-dollar pack of gum, his receipt is "support" that he is not a "swindler," because he paid for such gum and did not "swindle" to obtain it. Along the same lines, all documents prepared by Guo in any fashion about any subject would "support" the negative proof that Mr. Guo has not committed forgery, and thus would need to be produced pursuant to the Revised RFPs. Not only would Mr. Guo expend a substantial amount of money for his attorneys to comb through irrelevant documents, but a mountain of irrelevant documents would be produced, including the very categories of documents that this Court ordered Mr. Cheng not to request in the first place. For instance, even Mr. Guo's childhood correspondence could ostensibly be relevant to determinations of honesty, swindling, or "intimidation." Mr. Cheng's counsel already argued in favor of the potential relevance of Mr. Guo's childhood correspondence during the Conference, and the Court rejected this argument. Tr. 7:7-8:13 & 21:6-11. At this point, all of these Revised RFPs should be stricken.

So should three of the Revised RFPs concerning Mr. Guo's financial information. During the Conference, the Court specifically stated that discovery at the "granularity" of RFP No. 11, which sought "[a]ll documents relating to any transfer of over $500 made to or from [Mr. Guo] from December 1, 2019, to present," would not be permitted. Tr. 17:20-23. Nonetheless, Mr. Cheng still demands documents identifying **any** "monies paid on [Mr. Guo's] behalf by third parties from December 1, 2019, to present" (RRFP No. 14), which would capture the same "over $500" amount this Court already found both "ridiculous" and "beyond the pale." Tr. 17:23-24. Of course, this request would also capture much lesser "monies paid." To use the above example, if Mr. Guo's friend purchased the same one-dollar pack of gum for Mr. Guo, and Mr. Guo happened to pocket the receipt, he would have to produce it. Further, money paid by third parties on Mr. Guo's behalf has nothing whatsoever to do with Mr. Guo's net worth, the sole relevant financial issue in this case. This request is grossly disproportionate, and others are equally troubling. Mr. Cheng demands "any and all" documents that Mr. Guo "referred to" in "drafting responses" to discovery regarding his financial information—*in other cases*. RRFP No. 15 ("Any and all documents you referred to in drafting responses to the Interrogatories to Judgment Debtor in the Nevada Action."); RRFP No. 16 ("Any and all documents you referred to in drafting responses to the Information Subpoena in the matter of *Cheng v. Guo*, Index No. 157600/2020, in the Supreme

Court of the State of New York, County of New York."). If Mr. Cheng wants discovery in *this* case, then he is required to draft reasonable requests that are proportionate to *this* case.[7] Of course, Mr. Cheng is also required to adhere to this Court's Local Rules (Tr. 11:22-12:1), which are inapplicable in Nevada and New York state court. Since Mr. Cheng has already had ample opportunity to accomplish as much, these Revised RFPs should also be stricken.

For the remaining Revised RFPs, reasonable time limitations should be imposed.[8] As far as Mr. Guo's financial information, during the Conference, Mr. Cheng's counsel confirmed that Mr. Cheng only required this information for one purpose: to establish Mr. Guo's "net worth." Tr. 9:24-10:5; *id.* at 10:11-12 ("our discovery is tailored to finding out what is in fact his net worth"). Mr. Cheng demands every state and federal tax return that Mr. Guo has filed "from 2017 to the present" (RFP No. 6) regardless. Plainly, Mr. Cheng does not need to reach back to the 2017 tax return, which contains information from the entire 2016 tax year, to ascertain Mr. Guo's current net worth. Mr. Guo's two most recent tax returns—*i.e.*, the tax returns he filed in 2019 and 2020, which provide financial information dating back to 2018—would more than suffice.[9] Similarly, Mr. Cheng does not require any and all documents—from any and all points in time—to prove his case. By way of example only, Mr. Cheng demands "any and all" documents, without time restriction, supporting Mr. Guo's allegation (made "upon information and belief") that Mr. Cheng and Mr. Yong "are among the activists paid by the Chinese government … to defame Guo." RRFP No. 105. Given that Mr. Cheng's and Mr. Yong's Tweets were posted in the Summer of 2018 (SAC ¶¶ 18-28), and Mr. Guo alleged these "actions" "enhance[d] the official propaganda and false accusation[s] by the CCP against Guo" (SAC ¶ 29), the absence of any time limitation on this request is disproportional. Since the same is true of the rest of the Revised RFPs, Mr. Guo should not be required to produce any documents created, dated, transmitted, or last modified on or after January 1, 2017. As a reference point, Mr. Guo asked Mr. Cheng to produce documents

---

[7] Mr. Cheng's effort to shortcut the discovery process in this case by obtaining information from other cases is reminiscent of his prior position regarding the protective order. More specifically, Mr. Cheng's counsel previously argued that no protective order was necessary because they "needed" to "compare notes" (*i.e.*, exchange Mr. Guo's confidential information) with Mr. Guo's "creditors" from other, unrelated cases. The Court disagreed. Nonetheless, Mr. Cheng's counsel continued to pursue a carveout in the protective order to allow them to share confidential information from this case with counsel in other cases, before finally relenting during the February 24 meet and confer call.

[8] Mr. Guo does not challenge the time limitations set forth in RRFP Nos. 11 & 30. Nor does Mr. Guo challenge (on this basis) the Revised RFPs seeking documents "sufficient" to identify the assets, ownership interests, income, or property that Mr. Guo currently "has" or "owns." *See, e.g.*, RRFP Nos. 2-5, 9. Mr. Guo also does not challenge RRFP No. 8 on these grounds, as Mr. Cheng agreed to modify this request to seek benefits in the way of dividends and retirement income that Mr. Guo has received in the past three years.

[9] In fact, the tax returns filed in 2020 alone would more than suffice. Nonetheless, in a show of good faith, Mr. Guo would also produce his tax returns filed in 2019.

**SCHULMANBHATTACHARYA**   Page | 5

"created, dated, transmitted, or last modified on or after January 1, *2018*, through and including the present day."

Because the Revised RFPs are still vastly overbroad and disproportionate, and Mr. Cheng has already had several opportunities to issue properly tailored, proportional requests, Mr. Guo respectfully requests that the Court: (i) strike RRFP Nos. 14-16, 18, 22-23, 25, 52, 59-64, 73, 83, 106, 108-113, 124, 126 & 129; (ii) modify RRFP No. 6 to request the tax returns that Mr. Guo filed in 2019 and 2020; and (iii) impose a time limitation of documents "created, dated, transmitted, or last modified on or after January 1, 2017, through and including the present day," for the remaining RRFPs (including any RRFPs from category (i) that are not stricken), with the exception of RRFPs Nos. 2-5, 8, 9, 11 & 30. Mr. Guo also requests that the Court enter the parties' proposed protective order (Ex. 1), which is substantially similar to the model protective orders used by courts in this district.

Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman

cc:   Jay M. Wolman (via ECF and email)