**SCHULMAN**BHATTACHARYA

The Clark Building | 7500 Old Georgetown Rd, Ste 901, Bethesda, MD 20814 | 240.356.8550

**JEFFREY S. GAVENMAN**
**direct dial** 240.356.8553   **email** jgavenman@schulmanbh.com

April 5, 2021

**Via ECF and Electronic Mail**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re: *Cheng v. Guo*, Case No. 1:20-cv-05678-KPF

Dear Judge Failla:

  We represent Defendant Wengui Guo ("Mr. Guo") in the above-captioned case, and we write in response to Plaintiff Logan Cheng's ("Mr. Cheng") April 2, 2021 letter requesting yet another extension of time for discovery (ECF No. 46) ("Request"). For the reasons set forth below, Mr. Cheng's Request is untimely, improper, and wholly meritless. The Request should be denied in its entirety.

  As a preliminary, procedural matter, pursuant to the Civil Case Management Plan and Scheduling Order: "Any application to modify or extend the dates herein … must be made no fewer than two business days prior to the expiration of the date sought to be extended." ECF No. 25 at 8. And pursuant to this Court's Order of March 3, 2021, the parties were ordered to "complete fact discovery on or before April 5, 2021." ECF No. 39 at 2. In that Order, the Court was quite clear: "There will be no further discovery extensions." *Id*. To the extent that Mr. Cheng was inclined to seek a discovery extension—despite the Court's express instruction—Mr. Cheng was obligated to do so by April 1, 2021. *Id*. Mr. Cheng's Request was therefore untimely. ECF No. 46. And Mr. Cheng has only himself to blame for this. As this Court is well-aware, it was Mr. Cheng's own failure to issue proper discovery requests that forced him to ask the Court for the prior extension of discovery. After Mr. Cheng finally served his Second Revised Requests for Production on March 8, 2021, which still included 61 document requests, Mr. Guo served his responses and objections (and made a fulsome production) just 17 days later, on March 25, 2021. ECF No. 46-2. Thus, by March 25, 2021, Mr. Cheng was also well-aware that Mr. Guo had invoked his Fifth Amendment privilege, and that no "asset discovery" would be forthcoming, either through documents or, obviously, in deposition. Yet, Mr. Cheng still declined to timely seek an extension.

  Along the same lines, even if Mr. Cheng's Request had been timely, the Scheduling Order "may be modified only for good cause." Fed. R. Civ. Proc. 16(b)(4); ECF No. 25 at 8 ("This Order may not be modified or the dates herein extended, except by further Order of this Court for good cause shown…"). "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). Mr. Cheng has shown none. Additional relevant factors include: (1) the discovery already conducted; (2) the specific additional discovery sought; (3) "unavoidable obstacles" that may necessitate a longer discovery schedule;

(4) "avoidable obstacles that have caused delays"; and (5) "the need for the Court to ensure that disputes are resolved fairly and efficiently, while minimizing costs to the parties to the greatest extent possible." *City of Almaty, Kazakhstan v. Ablyazov*, No. 15CV05345AJNKHP, 2018 WL 2148430, at *1 (S.D.N.Y. May 10, 2018). Here: Mr. Guo has already produced 9,004 pages of responsive documents, and Mr. Cheng has a more than sufficient record to prosecute his case; Mr. Cheng does not seek specific additional discovery but rather undefined, wide-ranging third-party discovery, which is neither relevant nor proportional to the needs of this case; Mr. Cheng is solely responsible for the discovery delays in this case, which were entirely avoidable; and Mr. Cheng does not require any additional discovery for this dispute to be resolved fairly and efficiently, while minimizing the (already substantial) costs. In sum, Mr. Cheng utterly fails to establish good cause for the relief he requests. Mr. Cheng does not even try to establish good cause. Instead, Mr. Cheng offers a series of specious arguments.

Taking them in order, Mr. Cheng first contends that Mr. Guo's counsel made improper "speaking objections" and improperly instructed Mr. Guo not to respond to questions if "any part of his understanding came from a communication with his attorney." Request at 1, n.2. As the transcript will capably confirm, however, neither contention is remotely accurate. Mr. Cheng persists: Mr. Guo waived attorney-client privilege to the extent that he filed the Nevada Litigation "on his counsel's advice." Request at 1, n.2. Even assuming, *arguendo*, that such waiver could constitute "good cause" for extending discovery, Mr. Guo did not in any way waive privilege. As support for his proposition to the contrary, Mr. Cheng simply cites *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 509, 510 (S.D.N.Y. 2002), which relied on the articulation of the at-issue waiver doctrine expressed in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). But as this Court has repeatedly recognized, this test "has since been criticized as faulty by the Second Circuit … because it fails to recognize that, for the 'at issue' waiver doctrine to apply, the party asserting the privilege must 'rely on privileged advice from his counsel to make his claim or defense.'" *Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 521 (S.D.N.Y. 2017) (citing *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04 CIV 10014 PKL, 2009 WL 3111766, at *16, n.6 (S.D.N.Y. Sept. 28, 2009) (noting the court's reliance on *Hearn* in *Bank Brussels* and the Second Circuit's rejection of *Hearn* in *Erie*). Mr. Guo never suggested that he relied on privileged advice of counsel to make his claims or defense. Nonetheless, Mr. Cheng maintains that none of Mr. Guo's communications with any of his attorneys are privileged because Mr. Guo invoked his Fifth Amendment privilege, which suggests a "fraudulent scheme." Request at 1, n.2. Plainly, invoking the Fifth Amendment does not suggest any wrongdoing whatsoever. Nor does Mr. Cheng have any basis to suggest that Mr. Guo discussed any "fraudulent scheme" with his attorneys. *Compare Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 1 A.D.3d 223, 224, 767 N.Y.S.2d 228 (2003) (exception to attorney-client privilege was warranted when complaint alleged law firm assisted in fraudulent scheme).

Mr. Cheng proceeds to argue that he "anticipates" that "the Court will overrule Defendant's invocation of the Fifth Amendment" (Request at 2), which is as baseless as it is immaterial. The invocation is interposed here in good faith pursuant to advice of personal counsel to Mr. Guo. And even if Mr. Guo's constitutional rights were somehow ruled inapplicable here, (*but see Lefkowitz v. Turley*, 414 U.S. 70 (1973)), that development would only entitle Mr. Cheng to continue Mr.

Guo's deposition—not to the absurd extension of third-party discovery he seeks. Still, Mr. Cheng maintains that he "needs" this extension because he "now needs to seek discovery from third parties he could not reasonably have anticipated needing." Request at 2. The problem for Mr. Cheng is twofold. *First*, Mr. Cheng could (and should) have anticipated "needing" this discovery. The thrust of Mr. Cheng's argument centers on his supposed need for discovery from Golden Springs (New York), Ltd. ("GSNY"). According to Mr. Cheng, he had no idea that GSNY paid for anything for Mr. Guo, including the Nevada Judgment. Request at 2. *However, Mr. Cheng has received no fewer than three wires to date from GSNY paying the Nevada Judgment and related costs, the first of which was sent on September 30, 2020.* ECF No. 21. To the extent Mr. Cheng wants to press his point that Mr. Guo "selectively invoked" his Fifth Amendment privilege by confirming this fact—while also entirely "refus[ing] to answer any questions about his assets," including questions about GSNY (Request at 2)—Mr. Cheng will have ample opportunity to do so in response to Mr. Guo's *in camera* submission.[1]

*Second*, Mr. Cheng fails to establish that he needs this discovery at all.[2] Indeed, Mr. Cheng concedes that "[d]iscovery of the relationship between Mr. Guo and GSNY," is "presently shielded by the claimed 5th Amendment privilege." Request at 2. If Mr. Cheng prevails in his challenge to the applicability of the 5th Amendment privilege, he would simply get the information he seeks. Still, it is worth pointing out the flaws in Mr. Cheng's contention that such discovery is in any way relevant or necessary. Mr. Cheng posits that such discovery "would likely demonstrate and elucidate Mr. Guo's improper motivation." *Id*.[3] The identity of the company paying Mr. Guo's legal bills has no bearing on Mr. Guo's motivation, and even if it did, Mr. Cheng already knows it is GSNY. Similarly, Mr. Cheng does not require further discovery to show that Mr. Guo "filed four defamation actions in three different courts on the same day." Request at 2. Mr. Cheng is

---

[1] Although Mr. Cheng seems to contend that Mr. Guo somehow waived his attorney-client privilege by testifying that GSNY receives all mail sent to his residence, Mr. Guo gave no such testimony; he merely stated that his building has a security protocol, and GSNY receives some of his mail.

[2] Mr. Cheng also maintains that Mr. Guo's counsel "at yesterday's conference, could not identify the criminal proceeding or investigation in connection with which the 5th Amendment privilege was invoked" (Request at 2), which would be irrelevant to his requested extension, even if it were accurate. But it is not. Mr. Guo's counsel did not identify the investigation during the conference for one reason: he was not asked by the Court to do so. In any event, such will be disclosed and discussed in Mr. Guo's forthcoming *in camera* submission.

[3] Mr. Cheng's counsel had ample opportunity to inquire about Mr. Guo's motivations during his deposition, which lasted nearly seven hours. Instead, Mr. Cheng's counsel chose to focus almost entirely during the deposition on Mr. Guo's financial matters and entirely irrelevant issues. Indeed, Mr. Cheng's counsel persisted in continuing to ask about Mr. Guo's financial matters even after the parties called the Court and it was clear that such questions were no longer necessary or appropriate. As the Court will see when the transcript is submitted as part of the *in camera* submission, Mr. Cheng's counsel spent only a tiny fraction of the deposition inquiring about Mr. Guo's motives in filing the Nevada Litigation.

well-aware of this fact too; further, Mr. Guo already produced the documents from these actions. Conversely, Mr. Guo has no idea of Mr. Cheng's fee arrangement with his counsel or even the amount of his legal fees, both of which bear directly on Mr. Cheng's claim for damages. That is because, during his deposition, Mr. Cheng resolutely refused to testify about either subject on the grounds of "privilege." In fact, during his deposition, *Mr. Cheng refused to answer almost any of Mr. Guo's counsel's questions about the Nevada Litigation*, although the Nevada Litigation (and Mr. Cheng's supposed damages from it) are the only bases for his claims against Mr. Guo in this case.

Mr. Guo would also note that, although Mr. Guo's financial condition goes to the issue of punitive damages (but not his motivation), it has only minor significance at this stage of the proceedings. Pursuant to Nevada Revised Statutes § 42.005(4): "Evidence of the financial condition of the defendant is not admissible for the purpose of determining the amount of punitive damages to be assessed until the commencement of the subsequent proceeding to determine the amount of exemplary or punitive damages to be assessed." That means, under Nevada law, the proceedings are bifurcated. *Wyeth v. Rowatt*, 126 Nev. 446, 459, 244 P.3d 765 (2010). To that end, evidence concerning Mr. Guo's financial condition may only be introduced in a second proceeding—and only if Mr. Cheng establishes his entitlement to punitive damages in the first place. *See id.*; *see also, e.g.*, *Union Pac. R.R. Co. v. Winecup Ranch, LLC*, No. 317CV00477LRHCLB, 2020 WL 7125918, at *25 (D. Nev. Dec. 4, 2020) (granting motion *in limine* and precluding plaintiff from introducing "evidence related to [defendant's] financial situation" during initial proceeding). And in the unlikely event that a second proceeding is warranted, Mr. Guo has already conceded that Mr. Cheng would likely be entitled to an adverse inference instruction. Request at 3. In fact, Mr. Guo's counsel even offered to work with Mr. Cheng's counsel to *agree upon* such an instruction, which would obviate the need for this additional discovery. *See* Exhibit A. Tellingly, Mr. Cheng filed this Request regardless.

Since the outset of discovery, Mr. Cheng's counsel's conduct has made plain that his goal is to conduct a massive inquest into Mr. Guo's affairs that goes lightyears beyond the needs of this case. As the Court will recall, Mr. Cheng initially served 144 extraordinarily overbroad document requests on Mr. Guo, which were vastly disproportionate to the needs of this case, seeking every shred of information about his background, business affairs, medical records, and family. ECF No. 26. Simultaneously, Mr. Cheng's counsel refused to enter into a confidentiality protective order because, as he expressly acknowledged, he wanted to be able to share Mr. Guo's information with other counsel prosecuting different claims against Mr. Guo in other pending litigations (ECF No. 27). Mr. Cheng's counsel's conduct to date raises serious concerns that discovery in this case is being used as an improper fishing expedition. Plaintiff's current request, for a plus-70-day extension to engage in unspecified and pervasive third-party discovery, merely continues that pattern and yet again lays bare Plaintiff's improper motives in connection with the discovery process. This point is underscored by Exhibit A, an email exchange from Friday, April 2, 2021, in which Mr. Cheng's counsel asked the undersigned about obtaining an extension in order to conduct such discovery. Undersigned counsel promptly responded that he believed Mr. Cheng would be entitled to an adverse inference regarding Mr. Guo's net worth based on Mr. Guo's invocation of the 5th Amendment to date. Undersigned counsel noted that such an adverse inference would allow Mr. Cheng to argue that Mr. Guo has a high net worth for the purposes of establishing the amount

of punitive damages, should such question arise – without the need for any further discovery. Undersigned counsel concluded the email by suggesting that they talk on Monday (the next business day, as the email was sent at 4:56 pm on Friday) about the "contours of that adverse inference and if we can come to an agreement about that, we can go to the judge with a mutual proposal for how to handle this issue." Rather than jump at the chance for an agreed upon adverse inference as to Mr. Guo's net worth – the sole basis that asset discovery is relevant in this case – Mr. Cheng's counsel filed this letter motion less than 30 minutes later seeking more than 70 days to conduct third party discovery. That he would so react fits in perfectly with what has become a clear pattern: Mr. Cheng is attempting to conduct discovery far beyond the needs of this case for an improper purpose. If he cared about the needs of *this* case, then Mr. Cheng's counsel would jump at the chance to get Mr. Guo's counsel to agree to an adverse inference. Instead, he did not even deem such an offer worthy of discussion, and filed this request.

Ultimately, Mr. Cheng resorts to arguing that Mr. Guo's credibility is "an issue," then cites a series of documents. To state the obvious: if Mr. Cheng already has documents calling Mr. Guo's credibility into question, then Mr. Cheng does not need vastly disproportionate, unfettered third-party discovery to hunt for more. Mr. Cheng's contention that Mr. Guo improperly withheld documents is also baseless. Neither one of the statements in Exhibits 3 or 5 is dishonest, nor did they need to be produced. The Interrogatory in Exhibit 5 asked Mr. Guo to identify "What is your legitimate occupation and amount of salaries or lawful income from any legitimate source **in the United States** since…2017." ECF No. 46-5 (emphasis added). Mr. Guo responded that, at that present time in 2019, he was "an entrepreneur without a salary or income." The $500,000 distribution from 2017 referred to in Exhibit 3 was **not from a source in the United States** and was thus not responsive to the question. ECF No. 46-3. Indeed, in his own letter, Mr. Cheng's counsel explicitly acknowledges that the payment was from a non-US source: China Golden Spring Group (Hong Kong) Ltd. Thus, Mr. Cheng defeats his own contention that one of the two documents must be dishonest and should have been produced. As such, Mr. Cheng has presented *no evidence* that any documents have been improperly withheld from production.[4]

In closing, Mr. Guo would note that Mr. Cheng is still demanding discovery that stretches far beyond the limited needs of this case, and without any remotely valid basis for doing so. Mr. Guo would also point out that Mr. Cheng will not recover anything approaching "at least $4 million" he claims this case is "worth." ECF No. 40. In his March 8, 2021 letter, Mr. Cheng insisted

---

[4] Mr. Cheng's passing suggestion that Mr. Guo spoliated evidence in this case is equally meritless. Mr. Cheng conveniently mischaracterizes Mr. Guo's testimony regarding communications with Mr. Cheng's overseas business partner and Hong Kong lawyer and such communications relationship to this litigation. This testimony was given in response to Mr. Cheng's counsel's inquiry regarding the basis for statements that Mr. Guo made about Mr. Cheng in a radio broadcast prior to the commencement of litigation. Mr. Guo responded that the basis for *those* statements – which are in no way at issue in this litigation and were not at issue in the Nevada litigation – was certain communications with Mr. Cheng's overseas business partner and Hong Kong lawyer. Furthermore, Mr. Guo testified that such documents were widely-disseminated online prior to his phone being hacked and thus such documents were not spoliated at all, even if they are no longer in his possession, custody, or control.

otherwise on the grounds that Nevada law permits treble damages as punitive damages, and that Mr. Cheng testified during his deposition that he had suffered "at least $1 million in actual damages." *Id*. But counsel provided no citation for such testimony; indeed, there could be no such citation, as Mr. Cheng never testified as such. The Court's previous understanding remains true; this is not a multi-million dollar case, and Mr. Cheng is still not entitled to the massively overbroad and disproportionate discovery he seeks.

                Respectfully submitted,

                /s/ Jeffrey S. Gavenman
                Jeffrey S. Gavenman


cc:     Jay M. Wolman (via ECF and email)