**SCHULMANBHATTACHARYA**  6116 Executive Boulevard, Suite 425, North Bethesda, Maryland 20852  240.356.8550

**JEFFREY S. GAVENMAN**
direct dial 240.356.8553  email jgavenman@schulmanbh.com

May 7, 2021

**Via ECF and Electronic Mail**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re:   *Cheng v. Guo*, Case No. 1:20-cv-05678-KPF
      Defendant's Response to Plaintiff's April 28, 2021 Letter

Dear Judge Failla:

      Pursuant to the Court's instructions during the telephonic conference of April 29, 2021, and as directed by the Court's Paperless Order entered on April 30, 2021, Defendant Wengui Guo ("Mr. Guo") respectfully submits this response to Plaintiff Logan Cheng's ("Mr. Cheng") letter dated April 28, 2021 (the "Letter") (ECF No. 54). As explained below and in the declarations attached hereto, Mr. Guo has had an attorney-client relationship with Daniel Podhaskie during all relevant times, and Mr. Guo did not waive attorney-client privilege in any manner, including as to his communications with Mr. Podhaskie.

      As both Mr. Podhaskie and Mr. Guo attest, Mr. Podhaskie began working as in-house counsel to Golden Spring (New York) Ltd. ("Golden Spring") in June 2018. *See* Declaration of Daniel T. Podhaskie ("Podhaskie Aff.") at ¶ 4; *see also* Declaration of Wengui Guo ("Guo Aff.") at ¶ 9. Golden Spring operates as a family office for Mr. Guo's family, and its purpose is to provide and coordinate the provision of various services, including legal services, to Mr. Guo and his family members. Podhaskie Aff. ¶ 4; Guo Aff. ¶¶ 8, 10. To that end, in his role as in-house counsel for Golden Spring, Mr. Podhaskie regularly has served as legal counsel to Mr. Guo and the individual members of his family, including by assisting Mr. Guo and other family members with legal issues as they arose and providing them with legal advice. Podhaskie Aff. ¶ 5; Guo Aff. ¶ 10. Mr. Podhaskie's responsibilities have thus always included providing personal legal advice to Mr. Guo's family members, including Mr. Guo. *Id*.

      Since 2018, Mr. Guo has sought personal legal advice from Mr. Podhaskie on a continuous basis, and Mr. Podhaskie has provided such advice. Podhaskie Aff. ¶¶ 6-8; Guo Aff. ¶¶ 4-7. Indeed, as Mr. Guo stated during his deposition, Mr. Podhaskie has served as Mr. Guo's personal counsel "all along." ECF No. 54-1 ("Tr.") at 25:22-26:1; *see also* Podhaskie Aff. ¶¶ 1, 4, 6-8; Guo Aff. ¶¶ 4-7.

Although Mr. Cheng emphasizes that Mr. Guo declined to state "in what matters Mr. Podhaskie represents him" or "whether there is a retainer agreement with Mr. Podhaskie" (Letter at 2), Mr. Cheng's emphasis is misplaced. Mr. Podhaskie was not required to litigate on Mr. Guo's behalf to form an attorney-client relationship with him, and: "[n]o special formality is required to demonstrate the establishment of that relationship." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 62 (S.D.N.Y. 2017). Further, "[i]t is well established that '[a]n attorney-client relationship may exist in the absence of a formal retainer agreement.'" *Town of Amherst v. Weiss*, 120 A.D.3d 1550, 1552, 993 N.Y.S.2d 396, 399 (4th Dept. 2014). That Golden Spring may have paid Mr. Podhaskie is equally immaterial. Mr. Podhaskie still provided Mr. Guo with legal advice, and third parties may (and often do) pay for legal services, including in similar circumstances. *See, e.g.*, New York Rules of Professional Conduct, Rule 1.8(f), Cmt. [11] ("Lawyers are frequently asked to represent clients under circumstances in which a third person will compensate them, in whole or in part. The third person might be a relative … or a co-client (such as a corporation…)"). And, an attorney-client relationship does not depend upon payment of a fee, either. *See Abraham v. Leigh*, No. 17 CIV. 5429 (KPF), 2019 WL 4256369, at *6 (S.D.N.Y. Sept. 9, 2019) (Failla, J.) ("[A]n attorney-client relationship does not depend on the existence of a formal retainer agreement or upon payment of a fee."); *see also CQS ABS Master Fund Ltd. v. MBIA Inc.*, No. 12 CIV. 6840 RJS, 2013 WL 3270322, at *11 (S.D.N.Y. June 24, 2013) (finding that the parties had established an attorney-client relationship "through their dealings, despite not having a formal retainer or fee agreement"). Instead, "[t]he formation of an attorney-client relationship hinges upon the client's [reasonable] belief that he is consulting an attorney in that capacity and his manifested intention to seek professional legal advice." *Murex*, 259 F. Supp. 3d at 61-62. As is evident, Mr. Guo believed, in good faith, that he was consulting Mr. Podhaskie in such capacity and expressed his intention to seek legal advice. Guo Aff. ¶¶ 4-7. Mr. Guo's belief was eminently reasonable. As Mr. Podhaskie attests, he *was* Mr. Guo's personal counsel. Podhaskie Aff. ¶¶ 1, 4, 6-8.

Equally apparent is that Mr. Guo's "invocation of attorney/client privilege" during his deposition was not "spurious," as Mr. Cheng contends. Letter at 2.[1] As to his communications with Mr. Podhaskie, Mr. Guo invoked attorney-client privilege only once. More specifically, Mr. Guo declined to answer Mr. Cheng's counsel's question as to whether "Golden Spring or anyone affiliated with it t[ook] part in the decision to sue Mr. Cheng in Nevada" because, as Mr. Guo explained, he had discussed the Nevada Litigation and the underlying facts with Mr. Podhaskie. Tr. 31:18-32:6; *see also* Guo Aff. ¶¶ 5-6; Podhaskie Aff. ¶ 7.[2]

Along those lines, Mr. Guo also did not testify that he was "withholding communications with Mr. Podhaskie as to the role of GSNY is [sic] bringing the Nevada Litigation." Letter at 2. The portion of the transcript that Mr. Cheng cites confirms as much. *Id.* (citing Tr. 31:18-32:26).

---

[1] As the Court upheld Mr. Guo's invocation of his Fifth Amendment rights and held that no waiver had occurred (ECF No. 52), Mr. Guo declines to address Mr. Cheng's assertion that he "refused to testify on 5th Amendment grounds as to his relationship with GSNY." Letter at 2.

[2] As Mr. Podhaskie explains, he did not direct or dictate the filing of any lawsuit on Mr. Guo's behalf, including the Nevada Litigation. Podhaskie Aff. ¶ 7; *see also* Guo Aff. ¶ 6. In addition, Golden Spring did not make the decision, in whole or in part, to commence or maintain the Nevada Litigation; that decision was solely Mr. Guo's. Podhaskie Aff. ¶ 9; Guo Aff. ¶ 6.

**SCHULMAN**BHATTACHARYA

Page | 3

Mr. Guo never "testified that his documents that were screened for production in this matter were given to a lawyer at GSNY who may not well actually be his personal attorney" (Letter at 2), either. Mr. Cheng's counsel asked Mr. Guo about "documents that were produced," and Mr. Guo responded that he gave *these* documents "to his lawyer," Mr. Podhaskie. Tr. 140:5-23, 177:11-178:8. Plainly, none of these documents were privileged regardless. Not only were these (non-privileged) documents produced, but as Mr. Cheng points out, "the parties agreed that the document requests were not intended to include documents covered by the attorney-client privilege." Letter at 2.

Ultimately, Mr. Cheng contends that Mr. Guo somehow "waived any attorney-client privilege in any document received by mail" because "all of his mail is routed to GSNY." Letter at 2. The issues with Mr. Cheng's contention are threefold. *First*, Mr. Guo did not state that any of his mail was read by anyone other than a translator. *See* Tr. 52:16-53:19; *see also* Tr. 55:14-17. *Second*, if any correspondence that went to Golden Spring was read by anyone, it was read by Mr. Guo's counsel, Mr. Podhaskie. *See* Tr. 52:16-53:19. *And third*, as undersigned counsel confirmed during the telephonic conference, this argument is moot in any event, as there is not a single piece of mail related to this case that was withheld as attorney-client privileged. Mr. Guo's attorneys, including the undersigned, simply did not mail privileged communications pertaining to this case or to the Nevada Litigation to Mr. Guo. Thus, it follows that Mr. Podhaskie never reviewed any privileged communications that were mailed to Mr. Guo by his outside counsel that pertain to this case or to the Nevada Litigation. Podhaskie Aff. ¶ 10. As Mr. Podhaskie attests, he is not aware of any such communications. *Id*. The question of whether privilege was somehow waived over this (nonexistent) set of communications is thus immaterial. In sum, nothing in Mr. Guo's deposition testimony supports Mr. Cheng's argument that Mr. Guo waived attorney-client privilege in any way, much less by (potentially) having his personal attorney review his mail.

Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman

Enclosures

Cc:   Jay M. Wolman (via ECF and email)