**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
LOGAN CHENG f/k/a SHUIYAN CHENG,  :
                                  :   Case No. 1:20-cv-05678-KPF
             Plaintiff,           :
                                  :
      -*against*-                 :
                                  :
WENGUI GUO,                       :
                                  :
             Defendant.           :
-----------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: (978) 801-1776
Fax: (305) 437-7662

Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Fax: (305) 437-7662
Email: ecf@randazza.com

Attorneys for Plaintiff

# TABLE OF CONTENTS

1.0   INTRODUCTION ...................................................................................................1

2.0   BACKGROUND .....................................................................................................2

    2.1   PLAINTIFF LOGAN CHENG ......................................................................2

    2.2   DEFENDANT WENGUI GUO .....................................................................2

    2.3   GOLDEN SPRING NEW YORK, LTD. ........................................................5

    2.4   THE NEVADA LAWSUIT ..........................................................................6

    2.5   POST-JUDGMENT PROCEEDINGS ............................................................8

3.0   LEGAL STANDARDS ...........................................................................................9

4.0   ARGUMENT ...........................................................................................................9

    4.1   COMPENSATORY DAMAGES .................................................................10

    4.2   PUNITIVE DAMAGES .............................................................................10

    4.3   ATTORNEYS' FEES ................................................................................14

5.0   CONCLUSION .....................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES**

*Ace Truck & Equip. Rentals v. Kahn*,
   103 Nev. 503 (1987) ................................................................................................. 14

*Adelson v. Harris*, 7
   74 F.3d 803 (2d Cir. 2014) ....................................................................................... 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................... 9

*Arrivalstar S.A. v. Meitek Inc.*, No. CV 12-01225-JVS (RNBx),
   2012 U.S. Dist. LEXIS 189358 (C.D. Cal. Nov. 20, 2012) ..................................... 14

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559 (1996) ................................................................................................. 14

*Bongiovi v. Sullivan*,
   122 Nev. 556, 138 P.3d 433 (2006) .................................................................. 11, 14

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001) ...................................................................................... 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................... 9

*Cotton v. Slone*,
   4 F.3d 176 (2d Cir. 1993) ........................................................................................ 14

*Friedman v. United States*, No. 2:18-CV-857 JCM (VCF),
   2019 U.S. Dist. LEXIS 2476 (D. Nev. Jan. 7, 2019) ................................................. 6

*Garcia v. Awerbach*,
   463 P.3d 461 (Nev. 2020) ........................................................................................ 11

*Gruber v. Baker*,
   20 Nev. 453, 23 P. 858 (1890) ................................................................................... 6

*Irving v. Irving*,
   122 Nev. 494, 134 P.3d 718 (2006) ......................................................................... 11

*John v. Douglas Cty. Sch. Dist.*,
   125 Nev. 746, 219 P.3d 1276 (2009) ....................................................................... 11

*Lum v. Stinnett*,
   87 Nev. 402, 488 P.2d 347 (1971) ............................................................................. 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ............................................................................................................9

*Nat'l Jewish Democratic Council v. Adelson*,
 417 F. Supp. 3d 416 (S.D.N.Y. 2019) .................................................................................9

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ..........................................................................................................12

*Stubbs v. Strickland*,
 129 Nev. 146, 297 P.3d 326 (Nev. 2013) ......................................................................9, 11

*Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*,
 120 Nev. 712, 100 P.3d 179 (2004)...................................................................................12

*Wyeth v. Rowatt*,
 126 Nev. 446, 244 P.3d 765 (2010)...................................................................................14

**STATUTES**

NRS 41.660 ................................................................................................................................8, 9

NRS 41.670 .......................................................................................................................2, 9, 10, 14

NRS 42.001 ..............................................................................................................................11, 14

**RULES**

Fed. R. Civ. P. 56..........................................................................................................................9

**OTHER AUTHORITIES**

Hearing before the Nevada Senate Judiciary Committee,
 77th Session (2013) (Statement of Marc Randazza) .......................................................12

Nev. Const. Art. I, Sec. 9.............................................................................................................12

# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**1.0   INTRODUCTION**

Defendant Wengui Guo[1] very unpersuasively claims to be a Chinese dissident.[2] Meanwhile, he then sues bona fide Chinese dissidents to try to silence them. The records of the courts of New York and elsewhere in this country are littered with cases where Guo brought a spurious defamation action against someone for mild criticisms or perceived slights. In common parlance, these are SLAPP suits—strategic lawsuits against public participation. Rather than engage in discourse with a critic or grow a thicker skin, a SLAPP plaintiff files a lawsuit to silence the defendant and discourage him or her from engaging in First Amendment-protected discourse.

In a SLAPP suit, the process is the punishment—a wealthy plaintiff like Guo buries an innocent defendant in legal fees, generates negative publicity against the defendant, and causes fear of the judicial machinery. The solution to this problem, many states have found, is the enactment of an anti-SLAPP statute; these statutes offer an expedited resolution of such suits and usually carry mandatory fee-shifting provisions. New York recently expanded its anti-SLAPP statute in furtherance of this policy of protecting defamation defendants; Nevada, where Guo sued the plaintiff here, has had a robust anti-SLAPP statute on the books for years. Nevada's statute, however, is not purely defensive. Nevada recognized that some SLAPP plaintiffs are so wealthy, that losing the case and paying fees to the defendant is no deterrent.

---

[1] Under various circumstances, Guo uses the names Ho Wan Kwok, Miles Kwok, Miles Guo, and Wengui Guo interchangeably. Defendant's legal name is, apparently, Ho Wan Kwok. *See* Transcript of Deposition of Ho Wan Kwok ("Guo Trans."), attached as **Exhibit 1**, at 8:5-9:15. The Court may amend the pleadings to conform to this issue. Fed. R. Civ. P. 15(b)(2).

[2] Evidence suggests that Guo may in fact be an agent of the Chinese government. Sarah Blaskey and Jay Weaver, "He's a Chinese billionaire and a member of Trump's Mar-a-Lago. Is he also a communist spy?", Miami Herald (Jul. 24, 2019) ("'[The evidence] showed that Mr. Guo was detained in China on the date he claims to have arrived in the U.S. in early 2015, that he sent hundreds of millions of dollars back and forth between China and the U.S. for years after Chinese authorities supposedly starting seizing his assets, and that he's used scores of lawsuits to engage in seemingly sham disputes against Chinese regime-connected entities while simultaneously filing very real lawsuits against legitimate Chinese dissidents to destroy their reputations and drain their finances.'"), available at: <https://www.miamiherald.com/news/politics-government/article232973237.html>, attached as **Exhibit 2**; "Is Guo Wengui, Chinese fugitive tycoon and member of Trump's Mar-a-Lago, also a spy?", South China Morning Post (Jul. 24, 2019), available at: <https://www.scmp.com/news/china/article/3019840/chinese-fugitive-tycoon-and-member-trumps-mar-lago-also-spy>, attached as **Exhibit 3**.

Guo brought a SLAPP suit against Plaintiff Logan Cheng in Nevada. Guo had no evidence to support his claims, but he brought them anyway. The Nevada court granted Mr. Cheng's anti-SLAPP motion, dismissing Guo's claims and awarding Mr. Cheng his attorneys' fees. But, the State of Nevada recognized that an award of attorneys' fees is not sufficient to make a SLAPP defendant whole or to deter such plaintiffs from abusing the legal process in the future. Accordingly, it included in its anti-SLAPP statute a provision that allows a prevailing SLAPP defendant to bring a separate action (colloquially known as a "SLAPP back") to recover compensatory damages, punitive damages, and attorneys' fees and costs of bringing the separate action. *See* NRS 41.670(1)(c).

Mr. Cheng is pursuing one claim in this action:[3] an anti-SLAPP action pursuant to NRS 41.670(1)(c). Plaintiff now moves for summary judgment on liability as to that claim.

## 2.0     BACKGROUND

### 2.1     Plaintiff Logan Cheng

Plaintiff Logan Cheng owns and operates a hotel which caters largely to Chinese tourists. *See* Transcript of Deposition of Logan Cheng ("Cheng Trans."), attached as **Exhibit 4**, at 31:4-10. Mr. Cheng, like many Chinese-Americans, also participates in anti-Chinese Communist Party (CCP) commentary online. *See id.* at 36:14-18.

### 2.2     Defendant Wengui Guo

Defendant Guo Wengui is a Chinese businessman who resides in the State of New York. *See* Guo Trans. at 11:24-12:5; 22:2-6. By most accounts, Guo is a billionaire.[4] Guo's story, however, is full of contradictions. When prodded under oath to testify as to his assets and income,

---

[3]     Mr. Cheng brought two additional claims in his original complaint: Malicious Prosecution and Action on a Foreign Judgment. Mr. Cheng voluntarily dismissed his Action on a Foreign Judgment claim on March 24, 2021 (Dkt. No. 45), and his Malicious Prosecution claim on November 11, 2021 (Dkt. No. 77).

[4]     *See, e.g.,* Ken Dilanian, *et al.*, "Who is Guo Wengui, the Chinese billionaire who owns the boat Steve Bannon was arrested on?", NBC News (Aug. 20, 2020), available at: <https://www.nbcnews.com/politics/justice-department/who-chinese-mogul-who-owns-boat-steve-bannon-was-busted-n1237511>, attached as **Exhibit 5**; James Palmer, "Who Is Guo Wengui, the Chinese Emigre With Links to Steve Bannon?", Foreign Policy (Aug. 26, 2020), available at: <https://foreignpolicy.com/2020/08/26/guo-wengui-chinese-billionaire-emigre-links-steve-bannon/>, attached as **Exhibit 6**; David Thomas, "Billionaire Guo Wengui wants Cahill disqualified in investor fight," Reuters (Oct. 21, 2021), available at: <https://www.reuters.com/legal/litigation/billionaire-guo-wengui-wants-cahill-disqualified-investor-fight-2021-10-21/>, attached as **Exhibit 7**.

Guo declined to testify, invoking his rights under the Fifth Amendment of the United States Constitution. *See* Guo Trans. at 12:6-15; 75:15-21. Guo resides in the 18th Floor Penthouse of the Sherry Netherland hotel, an apartment which has been listed for sale for $95 million. *See* Guo Trans. at 22:2-5; "781 Fifth Avenue Apartment #18TH FLOOR", Brown Harris Stevens;[5] Michelle Higgins, "And Now, the Trophy Co-op" NEW YORK TIMES (Sept. 20, 2012).[6] But, Guo claims that he does not own it. *See* Guo Trans. at 22:2-5. Indeed, Guo seems to claim that he does not own anything. When asked who paid for the contents of a tea glass he was drinking from, Guo answered, "Golden Spring." Guo Trans. at 76:5-7. His groceries? Golden Spring. Guo Trans. at 76:8-9. His clothes? Golden Spring. Guo Trans. at 76:18-19. When asked why Golden Spring pays for Guo's things, Guo pleads the Fifth. *See* Guo Trans. at 29:24-30:9; 30:16-24; 37:4-13; 37:23-38:7; 40:1-9; 48:7-14; 49:10-20; 76:10-17; 76:20-77:2.

Guo claims to be a dissident of the Chinese Communist Party. *See, e.g.,* Guo Trans. at 12: 2-5; Second Amended Complaint in the Nevada Action, **Exhibit 8**, at ¶ 5. As an entrepreneur, Guo has turned his dissidence into a profit-making venture, starting multiple for-profit platforms to air his purported grievances against the Chinese Communist Party and its leaders. *See* Guo Trans. at 12:1-15; Brian Schwartz, "Wealthy Chinese exile Guo Wengui, tied to misinformation campaigns, sued by investors in media company," CNBC (Aug. 23, 2021);[7] Chris Prentice, "U.S. SEC fines Guo Wengui-linked media firms for illegal securities offerings," REUTERS (Sept. 13, 2021);[8] Keach Hagey and Brian Spegele, "Ex-Trump Adviser Jason Miller Says New Social App Gettr is Backed by Foundation Tied to Guo Wengui," WALL STREET JOURNAL (Jul. 2, 2021).[9] He coordinates with the perennially indicted political operative Steve Bannon to further his activism.

---

[5]  Available at: <https://www.bhsusa.com/manhattan/upper-east-side/781-fifth-avenue-18thfloor/coop/20047957> (last accessed Nov. 16, 2021), attached as **Exhibit 9**.
[6]  Available at: <https://www.nytimes.com/2012/09/23/realestate/exclusive-full-floor-co-op-listed-for-95-million-at-sherry-netherland.html> (last accessed Nov. 16, 2021), attached as **Exhibit 10**.
[7]  Available at: <https://www.cnbc.com/2021/08/23/guo-wengui-sued-by-investors-in-media-company.html> (last accessed Nov. 16, 2021), attached as **Exhibit 11**.
[8]  Available at: <https://www.reuters.com/legal/litigation/us-sec-fines-media-firms-over-539-mln-illegal-securities-offerings-2021-09-13/> (last accessed Nov. 16, 2021), attached as **Exhibit 12**.
[9]  Available at: <https://www.wsj.com/articles/ex-trump-adviser-jason-miller-new-social-app-gettr-backed-by-guo-wengui-tied-foundation-11625199130> (last accessed Nov. 16, 2021), attached as **Exhibit 13**.

*See, e.g.*, Brian Schwartz, "Mystery shrouds nonprofit linked to wealthy Chinese exile: Steve Bannon leaves, records kept secret", CNBC (Aug. 16, 2020).[10] Accordingly, Guo claims to see shadows of the Chinese Communist Party everywhere he looks – however, his claims seem to only fall on those who dare to criticize him. According to Guo, anyone who criticizes him must be conspiring with the Chinese Communist Party to harm his reputation, and not simply people who might disagree with him. *See, e.g.,* Guo Trans. at 53:20-25; 94:11-14; 114:15-21. According to Guo, even Mr. Cheng's counsel must be a member of the Chinese Communist Party who is out to get him. *See* Guo Trans. at 77:16:24 ("… you [are] representing Cheng Shuiyan's case and that is because you are a hooligan counsel representing the CCP …").[11] Meanwhile, where most dissidents from Communist nations leave with the shirt on their backs, Guo managed to leave with enough of a fortune that he lives like royalty. Guo won't answer questions about his wealth, claiming the Fifth Amendment permits him to avoid revealing his financial situation. The Court may, therefore, infer that he is not what he claims to be.

While we are a nation of immigrants, most of us descended from those who came here seeking liberty – few of us arrived and became so immediately intimate with the American court system. Guo, on the other hand, seems to have come here for the sole purpose of filing defamation cases.[12] Guo's vexatious litigation is so sophisticated and mechanized that he often files multiple

---

[10] Available at: <https://www.cnbc.com/2021/08/16/steve-bannon-leaves-mysterious-nonprofit-linked-to-wealthy-chinese-exile.html> (last accessed Nov. 16, 2021), attached as **Exhibit 14**.

[11] Mr. Wolman, the attorney who took Guo's deposition on behalf of Mr. Cheng, is not an agent of the Chinese Communist Party. *See* Declaration of Jay M. Wolman at ¶ 4.

[12] An inexhaustive list of defamation cases filed by Guo follows: *Wengui Guo v. Hongkuan Li*, Case No. 8:18-cv-00259-PWG (Dist. MD, filed Jan. 26, 2018) (claims for defamation and intentional infliction of emotional distress); *Wengui Guo v. Xianmin Xiong*, Case No. 151430/2018 (Sup. Ct. NY, NY Cnty, filed Feb. 14, 2018) (claims for defamation and intentional infliction of emotional distress); *Wengui Guo v. Guan Liang*, Case No. 151428/2018 (Sup. Ct. NY, NY Cnty, filed Feb. 14, 2018) (claims for defamation and intentional infliction of emotional distress); *Wengui Guo v. Biao Teng*, Case No. 3:18-cv-02110-MAS-TJB (Dist. NJ, filed Feb. 14, 2018) (claims for defamation and intentional infliction of emotional distress); *Wengui Guo v. Yeliang Xia*, Case No. 1:18-cv-174 (E.D. VA, filed Feb. 14, 2018) (claims for defamation and intentional infliction of emotional distress); *Guo Wengui v. Roger J. Stone*, Case No. 1:18-cv-20983-JEM (S.D. Fla., filed Mar. 15, 2018) (claim for defamation); *Wengui Guo v. Jun Chen*, Case No. 2:18-cv-03800-MCA-MAH (Dist. NJ, filed Mar. 20, 2018) (claims for defamation and intentional infliction of emotional distress); *Wengui Guo v. Jiabin Yuan*, Case No. 2:18-cv-02276-SVW-JC (C.D. Cal., filed Mar. 20, 2018) (claims for defamation and intentional infliction of emotional distress); *Wengui Guo v. Baosheng Guo*, Case No. 1:18-cv-01064-TSE-IDD (E.D. VA, filed Aug. 27, 2018) (claims for defamation and fraud); *Wengui Guo v. Yudan Lin*, Case No. 3:18-cv-02982-MGL (Dist. S.C., filed Nov. 15, 2018) (claims for defamation and intentional infliction of

defamation cases in a single day.  *See, e.g., Xiong*, *Liang*, *Teng*, and *Xia* (filed on February 14, 2018); *Chen* and *Yuan* (filed on March 20, 2018); *Strategic Vision US LLC*, *The McClatchy Company*, *Warner Media, LLC*, and *Sinclair Broadcast Group, Inc.* (filed between August 1-2, 2019).  He certainly has the freedom to do so.  However, it is a bitter irony:  A man who came to the United States, ostensibly seeking freedom, embarked on a multi-million dollar campaign to stamp out freedom of expression.  The rabbit hole goes even deeper when the targets of his anti-First Amendment campaign seem to be exclusively critics of the Chinese Communist Party, yet he shrieks "Communist Gangster!" at anyone who he dislikes.  Mr. Guo could not possibly be what he claims to be.

### 2.3   Golden Spring New York, Ltd.

The Golden Spring that Guo repeatedly refers to throughout his deposition is Golden Spring New York, Ltd. ("Golden Spring").  *See, e.g.,* Guo Trans. at 38:11-40:22.  *See* Transcript of Deposition of Golden Spring 30(b)(6) Witness ("Golden Spring Trans."), attached as **Exhibit 26**, at 44:24-45:22.  Instead, Golden Spring purports to be               *See id.* at 38:25-39:22.  Golden Spring is owned by               , which is owned by          .[13]  *See id.* at 36:5-15; 42:3-43:15.  Golden Spring                    .  *See id.* at 45:19-22.  Golden Spring claims that                                      .  *See id*. at 46:15-47:3.  However, it apparently has no

---

emotional distress); *Guo Wengui v. Sam Nunberg, et al.*, Case No. 162069/2018 (Sup. Ct. NY, NY Cnty, filed Dec. 21, 2018) (claims for, *inter alia*, defamation, conspiracy to defame, and intentional infliction of emotional distress); *Guo Wengui v. Strategic Vision US LLC, et al.*, Case No. 157538/2019 (Sup. Ct. NY, NY Cnty, filed Aug. 1, 2019) (claim for defamation); *Wengui Guo v. The McClatchy Company, et al.*, Case No. 1:19-cv-23232-JEM (S.D. Fla., filed Aug. 2, 2019) (claims for defamation); *Guo Wengui v. Warner Media, LLC, et al.*, Case No. 157540/2019 (Sup. Ct. NY, NY Cnty, filed Aug. 2, 2019) (claim for defamation); *Wengui Guo v. Sinclair Broadcast Group, Inc., et al.*, Case No. 9:19-cv-81099-RLR (S.D. Fla., filed Aug. 2, 2019) (claim for defamation); *Guo Wengui v. Intizar Turson, et al.*, Case No. 1:20-cv-02781-PAE (S.D.N.Y., filed Apr. 30, 2020) (claims for slander).  Although this list incorporates the cases that Plaintiff's counsel was able to locate, Guo has testified that he is involved in "60 some lawsuits."  *See* Guo Trans. at 53:21.

[13]   In a matter pending in the Supreme Court of New York, the court there observed that "the best evidence that has been made available to the Court compellingly suggests that any assets that Golden Spring has were provided to Golden Spring by Mr. Kwok."  *See* Transcript of Hearing on Motion, *Pacific Alliance Asia Opportunity Fund L.P. v. Guo Wengui, et al.*, Index No. 652077/2017 (N.Y. Cnty., May 27, 2021), attached as **Exhibit 15**.

corporate documents attesting to this policy; the only documents it produced regarding the funding of the defamation litigation are records of ███████████████████ and purported ███████ regarding ████████████████████████.[14]  *See* Declaration of Jay M. Wolman at ¶ 28; bank records produced by Golden Spring New York, Ltd., attached as **Exhibit 27**.  Strangely enough, despite the fact that the Chinese government controls Hong Kong, and it has not been shy about cracking down on dissidents there, Guo's billions in resources seem to flow freely from a Hong Kong entity to a U.S. entity, without any impediments at all.  And then those resources are used to stifle criticism of the Chinese Communist Party.  As the kids say, "kinda sus."[15]

**2.4   The Nevada Lawsuit**

On August 9, 2018, Plaintiff Guo filed a complaint in the Eighth Judicial District Court for Clark County, Nevada against Mr. Cheng for (1) defamation, (2) defamation *per se*, and (3) intentional infliction of emotional distress.  *See* Complaint, attached as **Exhibit 16**.  Guo amended his complaint twice, with the operative Second Amended Complaint being filed on April 18, 2019.  Guo's Second Amended Complaint brought the same claims as his first Complaint.  *See* Second Amended Complaint, attached as **Exhibit 8**.

The allegations in the Nevada lawsuit were based on six statements Mr. Cheng made on Twitter criticizing Guo's reputation of being a Chinese dissident as unearned and stating that Guo had in fact undermined the political movement he claimed to support.  The statements, written originally in Mandarin, are translated as follows:

---

[14]   Golden Spring is either the alter ego of Guo, as demonstrated by ████████████████████████████████████████████.  "To maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit."  *Lum v. Stinnett*, 87 Nev. 402, 408, 488 P.2d 347, 350 (1971) (*citing Gruber v. Baker*, 20 Nev. 453, 23 P. 858, 862 (1890)); *see also Friedman v. United States*, No. 2:18-CV-857 JCM (VCF), 2019 U.S. Dist. LEXIS 2476, at *23 (D. Nev. Jan. 7, 2019) ("Although some states have abolished claims for champerty and maintenance, Nevada still recognizes these causes of action.")  Mr. Cheng reserves all rights he may have to bring a claim against Golden Spring.

[15]   "'Sus' is an abbreviation for 'suspicious' often used by players of the game Among Us when referring to those that are suspected of being an impostor."  "Sus (Among Us)", Know Your Meme (last accessed Nov. 18, 2021), attached as **Exhibit 17**, available at: <https://knowyourmeme.com/memes/sus-among-us>.

Tweet # 1:  3 is also right, because Guo and Xi made an exorbitant financial deal, Guo is nothing like a businessman, his immense wealth was all swindled from colluding with communist bandits, this time he made a bargain with Xi Deal Premier for an astronomical amount, but this deal is built upon the sacrifice of 1.4 billion people's life savings as the price for the bargain, everyone knows that Xi only wants to be guaranteed that he is the Emperor, he is very generous with giving money, one hundred billion, a trillion, he will easily give. It's hard for Guo notto become a wealthy tycoon.

Tweet # 2:  Guo just aggressively cheats cheats cheats. Guo cheated and is saddled with so many lawsuits the lies have become more and more preposterous, he completely disregards the laws of Western civilized nations, one can only imagine what he was like when he was in China.

Tweet # 3:  Guo has no fear, continuing nonstop to make up large amounts of shameless lies, this brings the biggest shame to all of us overseas Chinese, is it really that evil triumphs over good and the world is turned upside down?

Tweet # 4:  We cannot even deal with one Guo Liar, how can we overthrow the evil Chinese Communist Party?

Tweet # 5:  Guo bewitched a bunch of people, lied to a bunch of people, attacked and threated a bunch of people, and also severely foment internal strife causing a bunch of people to turn against each other, in a short period of time effectively scattering the overseas democracy movement, completely losing its combat power.

Tweet # 6:  Guo intentionally made up large amounts of trashy lies, and also nonstop making enemies, his goal was to divert the people's attention, to split up and weaken the combat power of the democracy movement, and thus achieve the goal of maintaining a stable overseas status quo.

See Declaration of Jenny Wang, **Exhibit 18**.[16]

Upon receipt of Guo's Second Amended Complaint, counsel for Mr. Cheng advised Guo, via letter, that his suit was meritless and susceptible to dismissal under Nevada's anti-SLAPP Statute. *See* Letter dated May 14, 2019, attached as **Exhibit 19**. Having received no response to the letter from Mr. Cheng's counsel, on June 14, 2019, Mr. Cheng filed his anti-SLAPP Special Motion to Dismiss Under NRS 41.660 (the "anti-SLAPP Motion") as to all of Guo's claims. *See* anti-SLAPP Motion, attached as **Exhibit 20**. Under Nevada law, Guo's claims failed. To satisfy his evidentiary burden under the second prong of the anti-SLAPP statute, Guo must have been able

---

[16] Notably, the unsworn translations provided by Guo were controverted by the testimony of two sworn translations provided by Mr. Cheng.

to present "a prima facie showing that [he] has a probability of prevailing on its claims." *See* **Exhibit 21**, anti-SLAPP Order at 2. He could not do so.

On January 30, 2020, the district court granted Mr. Cheng's anti-SLAPP motion, dismissing all of Guo's claims against him with prejudice under NRS 41.660. *See* anti-SLAPP Order, attached as **Exhibit 21**. The district court found that Mr. Cheng's statements were protected under the First Amendment and that Guo had failed to so much as make a *prima facie* showing that he had a probability of prevailing. *See id.* at 2-3.

### 2.5   Post-Judgment Proceedings

Notice of entry of the district court's order was given by Mr. Cheng to Guo on February 3, 2020. *See* Notice of Entry of Order, attached as **Exhibit 22**. On June 4, 2020, the district court granted Mr. Cheng's motion for fees and costs, awarding him $1,984.84 in costs, $184,955.55 in attorneys' fees, and an award of $10,000.00. *See* Order Granting Attorneys' Fees Motion, attached as **Exhibit 23**.

Guo did not immediately pay the award. Instead, he engaged in bad faith conduct to frustrate communications and collections. Guo instructed his attorneys to withdraw from the case, and his attorneys moved to withdraw on June 18, 2020. *See* Motion to Withdraw as Counsel, attached as **Exhibit 24**. The district court granted Guo's counsel's motion to withdraw on July 28, 2020, leaving Guo proceeding in the case *pro se*. *See* Order Granting Motion to Withdraw, attached as **Exhibit 25**. Counsel in the district court later appeared on Guo's behalf to belatedly, and unsuccessfully, challenge the judgment.

Mr. Cheng filed this suit on July 22, 2020, seeking damages he suffered as a result of Guo's actions, and for payment of the Nevada judgment. *See* Complaint, Dkt. No. 1. Mr. Cheng also domesticated the Nevada judgment in the Supreme Court of the State of New York, New York County, in aid of collection. *See Guo v. Cheng,* Index No. 157600/2020 (N.Y. Cty., filed Sept. 4, 2020). Facing no alternative, Guo ultimately paid the Nevada fee awards; Guo made his final payment of the Nevada judgments on or about February 3, 2021, and the parties jointly dismissed Mr. Cheng's claim on the Nevada judgment. *See* Dkt. No. 45.

**3.0      LEGAL STANDARDS**

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is one which "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. Evidence may show a genuine dispute exists where "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 244.

A party seeking summary judgment bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

**4.0      ARGUMENT**

Under Nevada law, a litigant who succeeds on a motion to dismiss under Nevada's anti-SLAPP statute "may bring a separate action to recover: (1) [c]ompensatory damages; (2) [p]unitive damages; and (3) [a]ttorney's fees and costs of bringing the separate action." NRS 41.670(1)(c). "Under Nevada's anti-SLAPP statute, the sole precondition to a defendant's entitlement to compensatory damages and attorney's fees is the district court's grant of a special motion to dismiss." *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 432 (S.D.N.Y. 2019) (citing NRS 41.670(1)(c)). "Under Nevada law, 'a plain and unambiguous statute' is interpreted 'according to its ordinary meaning.'" *Id*. at 427 (quoting *Stubbs v. Strickland*, 129 Nev. 146, 297 P.3d 326, 329 (Nev. 2013)).

Here, the facts are undisputed: Mr. Cheng filed an anti-SLAPP Special Motion to Dismiss against Guo's claims pursuant to NRS 41.660, and the district court granted Mr. Cheng's motion. *See* **Exhibit 20**, anti-SLAPP Motion; **Exhibit 21**, anti-SLAPP Order. Accordingly, liability is conclusively established as to Mr. Cheng's anti-SLAPP claim, and Mr. Cheng is entitled to

summary judgment on the issue of liability and an award of compensatory damages, punitive damages, and his attorneys fees in bringing this action.

### 4.1  Compensatory Damages

As a proximate result of Guo's frivolous lawsuit, Mr. Cheng suffered damages, both personally and financially. *See* Cheng Trans. at 89:9-90:7. Mr. Cheng was required to expend money retaining attorneys to defend him the case, and was forced to spend extensive time addressing the case both separately and with his attorneys. *Id*. at 46:13-47:15. Although Mr. Cheng's reasonable attorneys' fees were begrudgingly and belatedly re-paid to him by Golden Spring (as a proxy for Guo), as required by the Nevada court, Mr. Cheng's damages go beyond the fees that Guo's frivolous lawsuit required of him.

Mr. Cheng additionally suffered personal damages. *Id*. at 89:20-92:12. Mr. Cheng's personal reputation suffered, which impacted his businesses and his personal life. *Id*. As a businessman, his customers, who largely come to visit his hotel from China, left in droves or otherwise avoided his establishment. *Id*. at 30:5-32:8. Business ventures that Mr. Cheng participated in soon fell apart after his future partners learned that he had been sued by Wengui Guo, which caused them to question to stability of Mr. Cheng's financial condition. *Id*. at 88:11-89:19. Mr. Cheng suffered emotional harm due to the stress caused by the lawsuit and being subject to potential financial ruin. *Id*. at 89:22-92:12. Mr. Cheng suffered further mental harm and anguish because his daughter was tormented in school based upon the allegations made against him by Guo in his frivolous lawsuit. *Id*.

Guo's frivolous lawsuit caused harm to Mr. Cheng, and Mr. Cheng is entitled to compensatory damages, to be assessed at trial.

### 4.2  Punitive Damages

NRS 41.670(1)(c) authorizes a SLAPP defendant to recover punitive damages against the SLAPP plaintiff in an action brought under that section. Punitive damages here are determined under Nevada law. *See Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 425-27 (S.D.N.Y. 2019) (finding Nevada law applied to claims for punitive damages under Nevada

anti-SLAPP statute). Under Nevada law, a plaintiff may recover punitive damages against a defendant "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." NRS 42.005. Mr. Cheng is entitled to punitive damages here, where Guo acted with oppression and express malice in filing and maintaining his baseless lawsuit against Mr. Cheng.

Nevada statute defines "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." NRS 42.001(4). "Express malice is conduct intended to injure a person, while implied malice is despicable conduct that a person engages in with conscious disregard of another's rights." *Garcia v. Awerbach*, 463 P.3d 461, 464 (Nev. 2020) (citing *Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 451 (2006); NRS 42.001(3)). A defendant acts with conscious disregard when he or she has "knowledge of the probable harmful consequences of a wrongful act and … willful[ly] and deliberate[ly] fail[s] to act to avoid those consequences." NRS 42.001(1).

By definition, a prevailing defendant in a SLAPP suit should be entitled to punitive damages should they bring a SLAPP back action. A SLAPP lawsuit is an abusive "meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights". *Stubbs v. Strickland*, 129 Nev. 146, 150, 297 P.3d 326, 329 (2013). SLAPP suits are not filed by a plaintiff seeking to prevail merits of the suit as much as to punish the defendant and deter others with the heavy financial burden of the attorney's fees and costs of defending the SLAPP lawsuit itself. *John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 752, 219 P.3d 1276, 1280 (2009) ("The hallmark of a SLAPP lawsuit is that it is filed to obtain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned."). The Nevada Supreme Court has squarely called all SLAPP suits "wasteful and abusive litigation." *Id*. at 757. Nevada statutes are to be construed so as to fulfill the public policy and legislative intent behind the statutory scheme. *Irving v. Irving*, 122 Nev. 494, 496, 134 P.3d 718, 720 (2006) ("When a statute is ambiguous, we look to the Legislature's intent in interpreting the statute. Legislative intent may be deduced by reason and public policy."). The rationale for

the 2013 amendments to the anti-SLAPP law were to financially deter these lawsuits as a SLAPP defendant is still saddled with debts from defending the abusive lawsuit, thus serving the plaintiff's goal of financially punishing the defendants regardless of losing the case. *See* Hearing before the Nevada Senate Judiciary Committee, 77th Session (2013) (Statement of Marc Randazza). Thus, a prevailing anti-SLAPP defendants should automatically be entitled to an award of punitive damages.[17]

Even if the Court viewed punitive damages as not automatic by virtue of the SLAPP plaintiff having been found to have brought wasteful and abusive litigation, Guo must be made the subject of punitive damages. Defendant Guo filed a baseless lawsuit against Mr. Cheng not because he thought he had a viable claim, but instead to silence Mr. Cheng's speech. Political speech is among the most protected and sacrosanct forms of free speech recognized in the United States and Nevada. *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 722, 100 P.3d 179, 187-88 (2004) (First Amendment protection is "at its zenith" for "core political speech."); *see also* Nev. Const. Art. I, Sec. 9 ("Every citizen may freely speak, write and publish his sentiments on all subjects…"). In filing the frivolous lawsuit, Guo acted with oppression and malice, and Mr. Cheng is accordingly entitled to punitive damages.

Guo is a public figure. To bring a defamation claim, a public figure must show that a defendant's statements were made with actual malice, that is with knowing falsity or a reckless disregard for the truth. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Guo knew this fact when he sued Mr. Cheng in Nevada. By that time, Guo had already litigated numerous defamation cases as a plaintiff, and he was on notice that any claim he brings must be substantiated in this way.[18] Despite this, Guo filed his frivolous lawsuit against Mr. Cheng with no evidence to substantiate his claims, because none existed. It didn't matter to him. He was put on notice, by letter, before Cheng filed his anti-SLAPP motion. *See* Letter dated May 14, 2019, attached as

---

[17] The court in *Nat'l Jewish Democratic Council v. Adelson*, supra at 433, did not view it as automatic, but it also did not appear to consider the arguments raised herein.

[18] *See* FN 12, supra.

**Exhibit 19**. Guo did not bring the claim because he thought he would win, but the punishment was the process, and he believed the cost of harassing Mr. Cheng into silence would be no more than the cost of litigation. That might have been $196,940.39 in this case, but that is barely a rounding error when considering the resources he has access to. Despite his claims of being impoverished, "Golden Spring" and related shell companies seem to lavish quite the set of luxuries upon him.[19]

Guo was given the opportunity, with the benefit of counsel, to make a showing that his claims had support, and he failed to make that showing. Accordingly, the district court in Nevada found that "… Plaintiff failed to make a prima facie showing that he has a probability of prevailing on his claims." *See* **Exhibit 21**, anti-SLAPP Order, at 2. With no showing of any credible evidence to support the claims brought by Guo, the district court in Nevada dismissed them. *See id.* at 3. Guo's brazenness in filing a lawsuit despite having no evidence and no factual background sufficient to support his claims shows that he acted with oppression and malice, and Mr. Cheng should be entitled to punitive damages.

Guo's conduct falls under the conduct that Nevada's punitive damages statute intended to prevent. Here, Guo acted with express malice, or at least implied malice, in filing the frivolous lawsuit. Filing the lawsuit without evidentiary support shows clearly that Guo had no motive other than to punish Mr. Cheng for speaking out against him and to prevent him from doing so in the future. Guo knew that Mr. Cheng would suffer harm as a result of the frivolous lawsuit and proceeded either with intent to harm Mr. Cheng, or at the very least, with knowledge that Mr. Cheng would suffer harm as a result. Here, Guo reviewed the complaint that his attorneys had prepared to file, and instructed his attorneys to file it. *See* Guo Trans. at 16:20-17:7; 107:4-7. Guo received a letter from Mr. Cheng's counsel telling him that the suit was baseless and would be dismissed under Nevada's anti-SLAPP statute, and Guo chose to proceed nonetheless. *See*

---

[19] In *Pacific Alliance*, the court recognized Mr. Guo's seemingly unending resources: "And, you know, I note that Mr. Kwok has apparently no concern for the $500,000 a day sanction for flagrantly violating prior orders of the Court with respect to the boat that Golden Spring's is paying to maintain and transport. And if my calculation is correct, the total of the contempt sanctions to date is $7.5 million." *See* **Exhibit 15**.

**Exhibit 19**. Guo's indifference to the merits of his lawsuit and his willingness to proceed regardless warrants punitive damages.

"The proper end of punitive damages is to punish and deter culpable conduct." *Ace Truck & Equip. Rentals v. Kahn*, 103 Nev. 503, 506 (1987). As noted previously, Guo habitually files frivolous lawsuits against those that disagree with him – because no court has truly deterred him from doing so. This time, Mr. Cheng happened to be the victim. Tomorrow, it will be someone else. The collective effect of Guo's lawsuits is exactly what he intends – that people who may have the urge to criticize him will think twice for fear of becoming a defendant in his next lawsuit. Nevada's anti-SLAPP statute recognizes this danger, and remedies it by providing for punitive damages to discourage such antics in the future.[20] These punitive damages are warranted here, for the sake of Mr. Cheng and the sake of those wishing to engage in their First Amendment rights without the fear of a frivolous lawsuit being filed against them.

### 4.3   Attorneys' Fees

"'Attorney's fees mandated by state statute are available when a federal court sits in diversity.'" *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (quoting *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993)). Here, Nevada's anti-SLAPP statute mandates that attorneys' fees in an action brought under NRS 41.670 be taxed against the defendant. NRS 41.670(1)(c). Accordingly, Mr. Cheng is entitled to his attorneys' fees in pursuing this action.

---

[20] In *Bongiovi v. Sullivan*, the Nevada Supreme Court adopted the U.S. Supreme Court's "three guideposts for deciding when a punitive damages award has violated due process." 122 Nev. 556, 582, 138 P.3d 433 451-52 (2006). These guideposts are "(1) 'the degree of reprehensibility of the defendant's conduct,' (2) the ratio of the punitive damage award to the 'actual harm inflicted on the plaintiff,' and (3) how the punitive damages award compares to other civil or criminal penalties 'that could be imposed for comparable misconduct.'" *Id*. at 582, 138 P.3d at 452 (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 580, 583 (1996)); *see Wyeth v. Rowatt*, 126 Nev. 446, 475, 244 P.3d 765, 785 (2010). Nevada caps punitive damages at $300,000 if compensatory damages were less than $100,000, or at three times the compensatory damages if compensatory damages were greater than $100,000. NRS 42.001(1).

Mr. Cheng has already been found to have incurred over $100,000 in compensatory damages by virtue of the Nevada attorneys' fee award. "Attorneys' fees are compensatory[.]" *Arrivalstar S.A. v. Meitek Inc*., No. CV 12-01225-JVS (RNBx), 2012 U.S. Dist. LEXIS 189358, at *11 (C.D. Cal. Nov. 20, 2012). Thus, even though Guo may have satisfied the award of attorneys' fees, they are to be included as part of the calculation of punitive damages.

## 5.0 CONCLUSION

In light of the foregoing, Plaintiff Logan Cheng asks that this Court enter summary judgment in his favor as to Defendant Wengui Guo's liability.

Dated November 18, 2021.

Respectfully Submitted,

/s/ Jay M. Wolman

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: (978) 801-1776
Fax: (305) 437-7662

Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Fax: (305) 437-7662
Email: ecf@randazza.com

Attorneys for Plaintiff

- 15 -
Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment
1:20-cv-05678-KPF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman