**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LOGAN CHENG f/k/a Shuiyan Cheng,

        *Plaintiff*,

-v-

WENGUI GUO,
        *Defendant*.

1:20-cv-05678-KPF

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jeffrey S. Gavenman
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Tel: (240) 356-8550
Fax: (240) 356-8558
jgavenman@schulmanbh.com

*Counsel for Defendant Wengui Guo*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 3

    A.  The Nevada Lawsuit. ............................................................................................... 3

    B.  This Lawsuit. ............................................................................................................ 4

LEGAL STANDARD ....................................................................................................... 10

ARGUMENT ..................................................................................................................... 10

    I.  The Court Should Disregard Mr. Cheng's Entire Rule 56.1 Statement, Along with Most of the "Factual" Assertions in His Motion and the Majority of His "Evidence." ............. 10

    II.  This Court Should Grant Mr. Guo's Motion for Summary Judgment. ............................ 15

      A.  Compensatory Damages. ....................................................................................... 15

        1.  Mr. Cheng Should be Precluded from Introducing Evidence of Damages. .............. 15

        2.  Mr. Cheng Cannot Establish Any of His Claimed Damages Regardless. .................. 18

          a.  Mr. Cheng Lacks Standing to Recover Damages to "His" Businesses. ................. 18

          b.  The Record is Devoid of Evidence to Support Compensatory Damages. .............. 19

      B.  Punitive Damages. ................................................................................................. 21

    III.  The Court Should Set a Briefing Schedule to Adjudicate Attorneys' Fees. .................. 25

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*24/7 Records, Inc. v. Sony Music Entertainment, Inc.*,
   566 F. Supp. 2d 305 (S.D.N.Y. 2008)............................................................................ 16

*Agence France Presse v. Morel*,
   293 F.R.D. 682 (S.D.N.Y. 2013) ............................................................................ *passim*

*Am Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*,
   No. 08-cv-06843 (NSR), 2014 WL 6694502 (S.D.N.Y. Nov. 25, 2014) ........................ 13

*Arrivalstar S.A. v. Meitek Inc.*,
   No. CV1201225JVSRNBX, 2012 WL 12877983 (C.D. Cal. Nov. 20, 2012) ................ 23

*Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*,
   No. 16 CIV. 3086 (KPF), 2019 WL 4857468 (S.D.N.Y. Oct. 2, 2019) .......................... 13

*Baker v. Urb. Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006).............................................................................. 15

*Beazer Homes Holding Corp. v. Dist. Ct.*,
   128 Nev. 723 (2012) ........................................................................................................ 18

*Brunzell v. Golden Gate National Bank*,
   85 Nev. 345 (1969) .......................................................................................................... 25

*Carter v. Nevada Sys. of Higher Educ.*,
   461 P.3d 172 (Nev. App. 2020) ...................................................................................... 20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................................................... 10

*Century Pac., Inc. v. Hilton Hotels Corp.*,
   528 F. Supp. 2d 206 (S.D.N.Y. 2007).............................................................................. 13

*Clark Cty. Sch. Dist. v. Payo*,
   133 Nev. 626 (2017) ........................................................................................................ 20

*Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona*,
   138 F. Supp. 3d 352 (S.D.N.Y. 2015).................................................................... *passim*

*Contemporary Mission v. U.S. Postal Serv.*,
   648 F.2d 97 (2d Cir. 1981)............................................................................................... 10

*Countrywide Home Loans, Inc. v. Thitchener*,
    124 Nev. 725 (Nev. 2008) ........................................................................... 22

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006) ................................................................. 15, 16

*Diggs v. Volpe*,
    No. 11 CIV. 6382 KPF, 2013 WL 4015758 (S.D.N.Y. Aug. 7, 2013) ........... 10

*El-Nahal v. Yassky*,
    835 F.3d 248 (2d Cir. 2016) ..................................................................... 10

*Emanuel v. Griffin*,
    No. 13-CV-1806 (JMF), 2015 WL 1379007 (S.D.N.Y. Mar. 25, 2015) ......... 12

*Epstein v. Kemper Ins. Companies*,
    210 F. Supp. 2d 308 (S.D.N.Y. 2002) ....................................................... 11

*Evans v. Dean Witter Reynolds, Inc.*,
    116 Nev. 598 (2000) ........................................................................ *passim*

*Feinberg v. Katz*,
    No. 99 Civ. 0045 (CSH), 2005 WL 2990633 (S.D.N.Y. Nov. 7, 2005) ......... 19

*Fernandez v. State Farm Mut. Auto. Ins. Co.*,
    338 F. Supp. 3d 1193 (D. Nev. 2018) ....................................................... 23

*Freedom Mortg. Corp. v. Kent*,
    No. 219CV01411APGDJA, 2020 WL 5096995 (D. Nev. Aug. 28, 2020) ...... 22

*Goenaga v. March of Dimes Birth Defects Found.*,
    51 F.3d 14 (2d Cir. 1995) ......................................................................... 10

*Gould Paper Corp. v. Madisen Corp.*,
    614 F. Supp. 2d 485 (S.D.N.Y. 2009) ....................................................... 16

*Guo v. Chen*,
    2:18-cv-03800-MCA-MAH (D.N.J. 2018) .................................................. 24

*Guo v. Guo*,
    1:18-cv-01064-TSE-IDD (E.D. Va. 2018) ................................................. 24

*Guo v. Liang*,
    Index No. 151428/2018 (Sup. Ct., N.Y. Cty., 2018) ................................... 24

*Guo v. Lin*,
    Case No. 3:18-cv-02982-MGL (D.S.C. 2018) ................................................ 24

*Guo v. Stone*,
    1:18-cv-20983 (S.D. Fla. 2018)……………………………………………………24

*Guo v. Yuan*,
    2:18-cv-02276-SVW-JC (C.D. Cal. 2018) ................................................ 24

*Guo v. Xia*,
    1:18-cv-000174-LO-TCB (E.D. Va. 2018) ................................................ 24

*Hernandez v. VanVeen*,
    No. 214CV1493JCMCWH, 2017 WL 4350664 (D. Nev. Sept. 29, 2017) ..................... 23

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir. 2001) ................................................ 13

*Intellivision v. Microsoft Corp.*,
    784 F. Supp. 2d 356 (S.D.N.Y. 2011) ................................................ 24

*Israyelyan v. Chavez*,
    466 P.3d 939, 2020 WL 3603743 (Nev. 2020) ................................................ 19

*Jones v. Niagara Frontier Transportation Authority (NFTA)*,
    836 F.2d 731 (2d Cir. 1987) ................................................ 19

*Levin v. American Document Servs., LLC*,
    828 F. App'x 788 (2d Cir. 2020) ................................................ 18

*Meiri v. Dacon*,
    759 F.2d 989 (2d Cir. 1985) ................................................ 10

*Mona v. Eighth Judicial District Court of State in and for County of Clark*,
    132 Nev. 719 (2016) ................................................ 19

*Nat'l Jewish Democratic Council v. Adelson*,
    417 F. Supp. 3d 416 (S.D.N.Y. 2019) ................................................ 6, 23

*Rea v. Sunrise Hospital & Medical Ctr.*,
    132 Nev. 1021, 2016 WL 6072428 (Nev. Ct. App. Oct. 11, 2016) ................................................ 21

*Rodriguez v. Schneider*,
    No. 95 CIV. 4083 (RPP), 1999 WL 459813 (S.D.N.Y. June 29, 1999) ..................... 12

iv

*Spotnana, Inc. v. American Talent Agency, Inc.*,
No. 1:09-cv-03698, 2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010) ......................... 16, 17

*Sprouse v. Wentz*,
105 Nev. 597 (1989) ...................................................................................... 18, 21

*Sutherland v. State Farm Mut. Auto. Ins. Co.*,
133 Nev. 1080, 2017 WL 4996835 (Nev. App. 2017) ...................................... 20

*Villagomes v. Lab. Corp. of Am.*,
783 F. Supp. 2d 1121 (D. Nev. 2011) ............................................................. 22

*Warth v. Seldin*,
422 U.S. 490 (1975) ..................................................................................... 19

**Rules**

Fed. R. Civ. P. 26 ......................................................................................... 15, 16

Fed. R. Civ. P. 37 ......................................................................................... 17

Fed. R. Civ. P. 56 ......................................................................................... *passim*

Indiv. R. 5 ................................................................................................. 11, 14

Loc. R. 56.1 ............................................................................................... 11

**Statutes**

NRS 41.670 ................................................................................................ *passim*

NRS 42.001 ................................................................................................ 22

Defendant Wengui Guo ("<u>Defendant</u>" or "<u>Mr. Guo</u>") respectfully submits this memorandum of law in support of his motion for partial summary judgment and in opposition to Plaintiff Logan Cheng's ("<u>Plaintiff</u>" or "<u>Mr. Cheng</u>") motion for partial summary judgment.

## <u>INTRODUCTION</u>

Mr. Cheng has litigated this case in an egregiously unreasonable manner from the outset, and with an improper purpose: driving up Mr. Guo's attorneys' fees. Mr. Cheng's instant Motion is just more of the same. Indeed, according to Mr. Cheng, to succeed on his Motion,[1] he needs only one undisputed fact—that his anti-SLAPP Motion was granted—and one paragraph of argument. Yet, Mr. Cheng submitted a 68-paragraph-long Local Rule 56.1 Statement and a 15-page Motion. Most of this space is spent arguing that Mr. Cheng is "entitled" to compensatory and punitive damages, even though he (supposedly) seeks summary judgment solely on the issue of liability. Suffice it to say, Mr. Cheng's papers are confusing. They are also procedurally improper. And, by Mr. Cheng's own assessment, the vast majority of his papers should be disregarded entirely. Even the most cursory review of Mr. Cheng's Rule 56.1 Statement and Motion confirms as much.

Most of Mr. Cheng's "factual" assertions are immaterial to any issue before the Court, much less the narrow issue raised in his Motion.[2] Further, the majority of Mr. Cheng's assertions are not facts; they are merely the argument of Mr. Cheng's counsel. They are also largely unsupported by the evidence that Mr. Cheng cites. Which is not to say that Mr. Cheng cites much actual evidence. Rather, Mr. Cheng relies on online articles, which are clearly inadmissible. And

---

[1] Mr. Guo references Mr. Cheng's Motion for Partial Summary Judgment as the "<u>Motion</u>" and cites to Mr. Cheng's Memorandum of Law in Support of his Motion (ECF No. 79) as "<u>Pl's Mot.</u>" Mr. Guo cites to Mr. Cheng's Local Rule 56.1 Statement (ECF No. 79-1) as "<u>Pl's SoF.</u>"

[2] Some assertions are absurdly irrelevant (*e.g.*, "Mr. Wolman … is not an agent of the Chinese Communist Party"). Pl's SoF ¶ 25; Declaration of Jay M. Wolman (ECF No. 79-29) ¶ 4.

for the most part, these articles do not even support whatever point Mr. Cheng meant to make. For example, Mr. Cheng states that "Guo coordinates with Steve Bannon," which has nothing to do with anything, and then cites an article for that proposition that suggests the opposite is true.[3] With the exception of his assertion that the anti-SLAPP Motion was granted, which is evidenced by the anti-SLAPP Order itself, Mr. Cheng's factual assertions and evidence should be disregarded. And since Mr. Cheng's counsel chose to include such blatantly inadmissible evidence[4] and immaterial points, Mr. Guo should be awarded his attorneys' fees.

As to the relevant points in Mr. Cheng's Rule 56.1 Statement and Motion, Mr. Guo does not dispute the fact that the anti-SLAPP Motion was granted. Nor does Mr. Guo disagree that this fact *permitted* Mr. Cheng to file this action and to *pursue* claims for compensatory and punitive damages. But NRS 41.670 (1)(c) merely provides a cause of action; it does not "entitle" Mr. Cheng to recover damages when these claimed damages are unsupported by record evidence or cannot be recovered as matter of law. Nor does this statute permit Mr. Cheng to disregard the mandatory federal rules of disclosure. In sum, Mr. Cheng is not "entitled" to damages, as he contends.

To the contrary, Mr. Guo should be awarded summary judgment on the issue of damages for at least five reasons. *First*, Mr. Cheng should be precluded from introducing evidence of his claimed compensatory damages: he never disclosed his damages calculations or supporting documents. *Second*, even if Mr. Cheng could introduce such evidence, he lacks standing to recover his claimed "business damages." *Third*, even if Mr. Cheng could recover compensatory damages, the record is devoid of evidence to support such a damages award, which is equally fatal to Mr.

---

[3] Pl's SoF ¶ 22; *see also* Defendant's Response to Rule 56.1 Statement ("Def's Resp.") ¶ 22.

[4] Remarkably, all of this irrelevant, inadmissible "evidence" is appended to a declaration from Mr. Cheng's experienced counsel, who, bizarrely, also *attests* to the fact that there is nothing wrong with being a Communist "*per se*." Declaration of Jay M. Wolman ("Wolman Decl.") ¶ 4.

Cheng's punitive damages claim. *Fourth*, the record is also devoid of evidence to indicate that Mr. Guo acted with oppression or malice, which is required for a punitive damages award. *And fifth*, Mr. Cheng should be judicially estopped from taking the position that the Nevada Lawsuit was so meritless as to indicate Mr. Guo's culpable intent, as Mr. Cheng took the opposite position before the Nevada court, and the Nevada court accepted it—and awarded him increased attorneys' fees as a result. For these reasons, the Court should grant Mr. Guo's motion for summary judgment in its entirety, award Mr. Guo certain attorneys' fees, dismiss with prejudice Mr. Cheng's claims for compensatory and punitive damages, and set a briefing schedule so that the parties may brief, and this Court may adjudicate, the amount of attorneys' fees (if any) to which Mr. Cheng is entitled.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Nevada Lawsuit.

On August 9, 2018, Mr. Guo filed his operative complaint against Mr. Cheng and another individual, Fang Yong ("Mr. Yong"), in the Eighth Judicial District Court of Clark County, Nevada (the "Nevada Lawsuit"). *See* ECF No. 1-1. Mr. Guo's claims against Mr. Cheng were based on Mr. Cheng's statements on Twitter, which included calling Mr. Guo a "swindler" and accusing him of "collusion and extortion." *Id*. at ¶¶ 112-117. In his prayer for relief, Mr. Guo requested "an award of money damages" against Mr. Cheng and Mr. Yong "in excess of $15,000." *Id*. at p. 20.

In response, Mr. Cheng moved to dismiss the Nevada Lawsuit for lack of personal jurisdiction or, alternatively, on grounds of forum *non conveniens*. *See* Declaration of Jeffrey S. Gavenman ("Gavenman Decl."), Exhibit A. In an affidavit filed alongside his reply, Mr. Cheng attested that Mr. Guo had "defamed" him in a 2018 video (the "2018 Video"). Gavenman Decl. Ex. B. Mr. Cheng also attested that he does not own or operate the Fortune Hotel and Suites in Las

Vegas (the "Fortune Hotel"). *Id*. ¶ 32 ("I do not own that hotel. Rather, a company, Las Vegas Lucky Investment LLC owns it. The hotel is operated by 325 Fortune Investment Inc."). In his reply, Mr. Cheng advanced the same arguments. *See* Gavenman Decl. Ex. A.

On June 14, 2019, Mr. Cheng filed an anti-SLAPP motion to dismiss Mr. Guo's claims under NRS 41.660 (the "anti-SLAPP Motion"). ECF No. 1-2; Def's Resp. ¶ 46. On January 30, 2020, the Nevada district court granted the anti-SLAPP Motion (the "anti-SLAPP Order"). ECF No. 1-3; Def's Resp. ¶ 50. On February 24, 2020, Mr. Cheng filed a motion for attorneys' fees and costs under NRS 41.670 (the "Fee Motion"), in which he argued for increased attorneys' fees due to the "complexity of the issues" in the Nevada Lawsuit. ECF No. 1-4 at 16-17. As Mr. Cheng put it: "These were not simple issues" and "[t]his case is very far from a garden-variety defamation claim." *Id*. at 17. Rather, the anti-SLAPP Motion "required a thorough discussion of nuanced issues of defamation and Anti-SLAPP law." *Id*. Accordingly, "Mr. Cheng needed attorneys intimately familiar with defamation and Anti-SLAPP issues," and the 411.75 "hours that Mr. Cheng's counsel spent on this case, as well as their hourly rates, were reasonable in light of this complexity." *Id*. at 17-18. As Mr. Cheng emphasized, the issues "required significant legal research." *Id*. at 10, 19, 21. Mr. Cheng also asked the Nevada court to impose a statutory penalty of $10,000 against Mr. Guo—the "maximum amount authorized"— as a "deterrent." *Id*. at 2, 21. On June 5, 2020, the Nevada district court granted the Fee Motion in its entirety and entered judgment against Mr. Guo in the amount of $196,940.39 (the "Nevada Judgment"). ECF No. 1-5.

**B.  This Lawsuit.**

On July 22, 2020, Mr. Cheng filed the underlying action against Mr. Guo. ECF No. 1 ("Cplt."). The thrust of Mr. Cheng's Complaint was that Mr. Guo had "made no effort to pay" the Nevada Judgment. *Id*. ¶ 2. Mr. Cheng purported to state three claims against Mr. Guo: malicious

prosecution, an action on a foreign judgment, and an anti-SLAPP action under NRS 670.1(c). *See id*. As Mr. Cheng alleged: "The elements of a claim under NRS 41.670 (1)(c) are simple. They are: (1) did the plaintiff file a Special Motion to Dismiss under NRS 41.660 in a prior action?; and (2) did the court in that action grant the Special Motion to Dismiss? If the answer to both questions is 'yes,' then liability under NRS 41.670 (1)(c) is conclusively established." *Id*. ¶ 19.

Between September 30 ($80,000) and October 1, 2020 ($116,940.39), Mr. Guo paid the Nevada Judgment in full. *See* ECF Nos. 21, 23, 45. Yet, on October 1, 2020, Mr. Cheng filed a letter seeking this Court's permission to move for summary judgment on all three counts, including his claim to enforce the entire Nevada Judgment. ECF No. 20. Mr. Cheng also sought permission to seek summary judgment "as to Mr. Guo's liability" on his claim for an anti-SLAPP action. *Id*. In his letter, Mr. Cheng repeated the above allegation from his Complaint. *Id*. at 2 ("The elements of a claim under NRS 41.670 are simple…"). Mr. Cheng further stated that "[t]he statute entitles Mr. Cheng to fees in this action as well as punitive damages, but while a trial may be warranted on these issues, there is no further need to litigate liability." *Id*. According to Mr. Cheng, he was equally "entitled" to summary judgment on his claim for malicious prosecution. *Id*.

On October 6, 2020, Mr. Guo responded to Mr. Cheng's letter to inform the Court of critical information that Mr. Cheng had conspicuously omitted: Mr. Guo had already paid the full amount of the Nevada Judgement. ECF No. 21 at 1. As Mr. Guo noted, "as the judgment has been paid in its entirety, Mr. Cheng has no grounds whatsoever to move for summary judgment" on his claim to enforce a foreign judgment; rather, that claim "must be dismissed." *Id*. As Mr. Guo further pointed out, the "claim for malicious prosecution (Count II) fails as a matter of law." *Id.* at 2. Mr. Guo also noted that "the extent to which Mr. Cheng [wa]s even moving for summary judgment under NRS 41.670 (1)(c)" was "unclear." *Id*. As Mr. Guo continued: "To the extent Mr. Cheng

meant to suggest he intends to move for summary judgment on the issue of Mr. Guo's liability as to punitive damages, as the same case Mr. Cheng cites confirms … he is not entitled to it." *Id.* (citing *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 433 (S.D.N.Y. 2019)).

The Court denied Mr. Cheng's request to file a motion for summary judgment. On November 6, 2020, the Court so-ordered the parties' proposed Civil Case Management Plan and Scheduling Order (the "Scheduling Order"), under which initial disclosures were to be served within ten days, fact discovery was to be completed by March 6, 2021, and expert discovery was to be completed by April 20, 2021. ECF No. 25. On November 20, 2020, Mr. Cheng served his initial disclosures on Mr. Guo. *See* Defendant's Local Rule 56.1 Statement ("Def's SoF") ¶ 1; Gavenman Decl. Ex. C. As to his "computation of damages," Mr. Cheng stated that he had suffered "damages" in the amount of the Nevada Judgment ($196,940.39), along with "any other fees or damages as liquidated by the court in Nevada." *Id.* at 2.[5] As to his other damages, Mr. Cheng claimed that he had suffered "lost business opportunities as a result of being the Defendant in [the Nevada Lawsuit]," "damages for harassment by Guo and his compatriots," and "lost opportunities as a result of the diversion of time and financial resources" throughout the Nevada Lawsuit. *Id.* Mr. Cheng also stated that he was "entitled" to seek attorneys' fees and punitive damages. *Id.* According to Mr. Cheng, however, he had not actually calculated any of his claimed damages. *Id.* As Mr. Cheng stated: "The damages are yet to be calculated," but "Plaintiff reserves the right to supplement this disclosure." *Id.* Mr. Cheng never supplemented his disclosure. Gavenman Decl. ¶ 6. Nor did Mr. Cheng provide Mr. Guo with a damages calculation or supporting documents (*id.* at ¶¶ 7, 8), although he was obligated to do so—and Mr. Guo explicitly requested this information.

---

[5] The Nevada district court subsequently awarded Mr. Cheng an additional amount as interest, which Mr. Guo paid. *See* Gavenman Decl. Ex. F ("Cheng Dep.") 50:1-12; Pl's Mot. at 10, 14.

More specifically, in his First Set of Interrogatories, Mr. Guo interposed the following as Interrogatory No. 6: "For each category of damages alleged in the Complaint, identify the dollar amount claimed and describe your method of calculating that amount." Def's SoF ¶ 2; Gavenman Decl. Ex. D. In his Responses and Objections dated January 13, 2021, Mr. Cheng stated:

> "The attorneys' fees accrued in the Nevada action are as set forth in the Complaint itself ... The attorneys' fees, expenses, and costs in this action shall be calculated in an amount to be determined based upon the reasonable rate(s) for Plaintiff's counsel, the time spent, and the actual costs and expenses accrued, all of which are ongoing and cannot yet be fixed. ***All other categories of damages are not subject to any particular method of calculation and are left to the jury***."

> *Id*. at p. 4 (Interrog. Resp. No. 6) (emphasis added).

In response to Mr. Guo's Interrogatory Nos. 7, 8 & 9, which asked Mr. Cheng to identify any opportunities "lost as a result of the Nevada Litigation" and any damages suffered "in the form of lost business opportunities" or "as a result of alleged 'harassment' by Mr. Guo and/or his 'compatriots,'" Mr. Cheng did not offer any substantive response, other than to refer Mr. Guo back to his response to Interrogatory No. 6. Gavenman Decl. Ex. D. In response to Mr. Guo's Interrogatory No. 5, which sought the identity of all custodians and locations of any documents related to damages, Mr. Cheng referred Mr. Guo to his response to Interrogatory No. 3, which provided no such information. *Id*. Otherwise, in response to Interrogatory No. 2, Mr. Cheng stated that "documents relating to financial losses may be found at Fortune Hotel and Suites Las Vegas," but that "such documents are still being identified." *Id*. While Mr. Cheng promised to "seasonably supplement this response in a timely manner" (*id*.), he never did so. Gavenman Decl. ¶ 10.

On January 13, 2021, Mr. Cheng also served his Responses and Objections to Mr. Guo's Requests for Production. Def's SoF ¶ 3; Gavenman Decl. Ex. E. In response to Mr. Guo's Request No. 8, which sought "[a]ll documents and communications related to [his] alleged damages in the Complaint," Mr. Cheng stated: "Plaintiff refers to the Judgment of the Nevada court produced in

7

response to Request No. 1 … As to any other category of damages, Plaintiff refers to the responses to Request Nos. 9, 10, and 11." Gavenman Decl. Ex. E. In response to Requests Nos. 9, 10, and 11, which sought "all documents and communications" related to Mr. Cheng's claimed damages, including documents and communications related to "any business opportunities" that Mr. Cheng had lost as a result of being the defendant in the Nevada Lawsuit and "any damages" that he had suffered as a result of "'harassment' by Mr. Guo and/or his 'compatriots,'" Mr. Cheng stated: "Plaintiff is in the process of identifying such documents and will seasonably supplement this response." *Id*. But Mr. Cheng never "supplemented" this response, either. Gavenman Decl. ¶ 12. Nor did Mr. Cheng identify or produce any documents in response to these Requests. *Id*. at ¶ 13.

On March 1, 2021, Mr. Cheng was deposed in this matter. *See* Gavenman Decl. Ex. F ("Cheng Dep."). During his deposition, Mr. Cheng testified that he brought this action to recover his damages incurred as a result of the 2018 Video. Cheng Dep. 71:6-23. Mr. Cheng was clear: all of his claimed damages in this lawsuit were caused by the 2018 Video. *Id*. at 36:4-40:18, 71:6-23. Indeed, Mr. Cheng repeatedly testified that "the case in Nevada has nothing to do with" and "no relevance" to this case. *Id*. at 51:16-24, 55:20-56:9, 70:7-15, 71:24-72:13.

According to Mr. Cheng, the 2018 Video had caused the Fortune Hotel to lose customers and travel revenue. *Id*. at 29:8-31:6, 31:21-32:8, 32:22-33:6. As Mr. Cheng clarified, ████████ ██████████████████████ *Id*. at 29:15-31:10. Mr. Cheng did not testify that the Fortune Hotel had suffered any losses whatsoever after June of 2018. *See id*. The Nevada Lawsuit was not filed until August 9, 2018. Def's Resp. ¶ 4. Mr. Cheng also testified that the 2018 Video had caused him to lose investors. Cheng Dep. 33:7-34:4. As to his alleged harm due to harassment by "Mr. Guo and his compatriots," Mr. Cheng "could not remember" even "how they harassed [him]." *Id*. at 41:5-15.

When asked by his own counsel to identify what damages his businesses had suffered from the Nevada Lawsuit, Mr. Cheng reiterated that his damages had been caused by the 2018 Video. Cheng Dep. 84:5-11. When asked if he had "done any calculations" as to his damages, Mr. Cheng responded: "I did not make any." *Id*. at 84:12-16. When asked "how much" the hotel had lost, Mr. Cheng responded: "The actual amount of loss at this point, I don't have it on hand, so I will make the calculation..." *Id*. at 85:23-86:4. When asked about any losses to his business "venture," Mr. Cheng responded: "I do need to go and look … and then calculat[e] the loss." *Id*. at 86:5-22. When asked about his "intangible losses," including reputational harm and emotional distress, Mr. Cheng responded that these losses were "hard to quantify with numbers." *Id*. at 29:15-22, 38:11-39:18.

After repeatedly testifying that any harm he had suffered was caused by the 2018 Video, Mr. Cheng took his counsel's goading and agreed that this harm had been exacerbated by the Nevada Lawsuit because Mr. Guo had sued him for "a hundred million" dollars. *See id*. at 83:21-92:11. In reality, Mr. Guo had only requested "damages in excess of $15,000." ECF No. 1-1 at 20.

After the Scheduling Order was entered, Mr. Cheng obtained no fewer than three extensions of the discovery period. ECF Nos. 39, 46, 48, 49, 64 & 65. Discovery eventually closed on October 1, 2021. ECF No. 65. By then, this case had been pending for fourteen months. *See* ECF No. 1. In all of this time, Mr. Cheng never provided Mr. Guo with a calculation of his claimed compensatory damages or any supporting documents. Gavenman Decl. ¶¶ 7, 8. Mr. Cheng never even produced *any* documents *related to* his claimed compensatory damages. *Id.* at ¶¶ 12-13, 15.

On March 24 and November 11, 2021, Mr. Cheng voluntarily dismissed with prejudice his claims for action on a foreign judgment and malicious prosecution. ECF Nos. 45, 77. On November 18, 2021, Mr. Cheng moved for summary judgment on his remaining claim; ostensibly, on the issue of liability. Mr. Guo now moves for summary judgment on the issue of damages.

**LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). Then, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995). If the movant meets its burden, then "the nonmoving party must 'set out specific facts showing a genuine issue for trial' using affidavits or otherwise.'" *Diggs v. Volpe*, No. 11 CIV. 6382 KPF, 2013 WL 4015758, at *5 (S.D.N.Y. Aug. 7, 2013) (citations omitted). Conclusory statements, conjecture, or speculation will not suffice. *See id*.; *see also Contemporary Mission v. U.S. Postal Serv.*, 648 F.2d 97, 107, n.14 (2d Cir. 1981) ("An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.") (cleaned up). "A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

**ARGUMENT**

**I.   The Court Should Disregard Mr. Cheng's Entire Rule 56.1 Statement, Along with Most of the "Factual" Assertions in His Motion and the Majority of His "Evidence."**

Mr. Cheng's Rule 56.1 Statement violates every possible procedural rule, which provides grounds for denying his entire Motion. Mr. Cheng was required to submit a "short and concise

statement" of "the material facts as to which [he] contends there is no genuine issue to be tried." Loc. R. 56.1(a); Indiv. R. 5(C) (a movant for summary judgment shall file a statement of material *undisputed* facts). In each paragraph, Mr. Cheng was obligated to set forth "only one factual assertion" (Indiv. R. 5(C)(ii)); as support, Mr. Cheng needed to cite admissible evidence. Loc. R. 56.1(d); Indiv. R. 5(C)(ii). Mr. Cheng is represented by experienced counsel who are assuredly aware of (and have the obligation to familiarize themselves with) these Rules. But Mr. Cheng and his counsel chose to ignore them.[6] Mr. Cheng and his counsel also ignore the relevant case law, which repeatedly confirms that statements in a Rule 56.1 statement "are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence," *Epstein v. Kemper Ins. Companies*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002), and that, "as a matter of course," courts will "not consider irrelevant facts because they are, by nature, not pertinent to the case." *Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015).

With the exception of perhaps two of them, Mr. Cheng's factual assertions are wholly irrelevant, by his own admission. *See* Pl's Mot. at 9-10 (contending that "liability is conclusively established" based on the fact that the anti-SLAPP Motion was granted); *see also* Cplt. ¶ 19 (alleging same); Pl's SoF ¶¶ 1-3, 7-38, 40, 42-45, 53, 55-58, 61-68 (asserting "facts" unrelated to grant of anti-SLAPP Motion). Even if Mr. Cheng had not forfeited this point, these facts—such as the translation of Mr. Cheng's Tweets—would still be immaterial to any issue before the Court, including the narrow issue raised in Mr. Cheng's Motion. *See* Def's Resp. ¶¶ 1-3, 7-38, 40, 42-45, 53, 55-58, 61-68. All of them should thus be disregarded. *See Rabbinical*, 138 F. Supp. 3d at 396

---

[6] As the deficiencies in Mr. Cheng's Rule 56.1 Statement are too numerous to recount within the allotted page limit, Mr. Guo respectfully directs the Court to his Response to this Rule 56.1 Statement, where Mr. Cheng's violations of the relevant rules are set forth in full. *See* Def's Resp.

(declining to consider irrelevant facts in Rule 56.1 Statement). Plus, to the extent that Mr. Cheng offers material "facts," they are duplicative. *See, e.g.,* Pl's SoF ¶ 6 ("The Nevada court granted Mr. Cheng's anti-SLAPP motion"); Pl's SoF ¶ 50 (same); Pl's SoF ¶ 60 (same). None of them were even necessary: they all cite the anti-SLAPP Motion and the anti-SLAPP Order, which speak for themselves. *See id.* Mr. Cheng's needlessly repetitive assertions should also be disregarded. *See Rabbinical*, 138 F. Supp. 3d at 395 (disregarding "repetitive or incomprehensible statements").

There is a reason for this repetition, although it is not a good one: Mr. Cheng's Rule 56.1 Statement repeats the same statements from his Motion verbatim. *Compare, e.g.,* Pl's Mot. at 3 ("As an entrepreneur, Guo has turned his dissidence into a profit-making venture, starting multiple for-profit platforms to air his purported grievances against the Chinese Communist Party and its leaders.") *with* Pl's SoF ¶ 21 (same); Pl's Mot. at 4 ("According to Guo, anyone who criticizes him must be conspiring with the Chinese Communist Party to harm his reputation, and not simply people who might disagree with him.") *with* Pl's SoF ¶ 23 (same). Plainly, these statements are not factual assertions; they are (irrelevant) argument. And as this Court has repeatedly emphasized: "*Rule 56.1 statements are not argument.*" *Rodriguez v. Schneider*, No. 95 CIV. 4083 (RPP), 1999 WL 459813, at *1, n.3 (S.D.N.Y. June 29, 1999) (emphasis in original). To be clear: "They should not contain conclusions, and they should be neither the source nor the result of 'cut-and-paste' efforts with the memorandum of law. A rule 56.1 statement that contains the same turns of phrase, if not the identical whole paragraphs, as the memorandum of law is improper." *Id.* Mr. Cheng's cut-and-paste argument and legal conclusions should therefore be ignored. *See id.*; *see also, e.g., Emanuel v. Griffin*, No. 13-CV-1806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015) ("In deciding Defendants' motions for summary judgment, the Court will ignore all portions of Plaintiffs' Rule 56.1 Statement that contain improper legal argument") (cleaned up).

Additional assertions in Mr. Cheng's Rule 56.1 Statement should be ignored for another reason: they are not supported by the evidence that he cites. *See, e.g.,* Pl's SoF 62 ¶ (asserting that Mr. Cheng "was forced to spend extensive time addressing the case" and then citing "Cheng Trans. at 46:13-47:15," where Mr. Cheng does not mention spending any time addressing the case); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("'where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion'") (citations omitted); *Am Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*, No. 08-cv-06843 (NSR), 2014 WL 6694502, at *1 (S.D.N.Y. Nov. 25, 2014) (granting motion to strike argumentative and unsupported assertions). But Mr. Cheng does not even cite much evidence.

Rather than citing "depositions, documents, electronically stored information, affidavits or declarations, admissions, or interrogatory answers" (Fed. R. Civ. P. 56(c)(1)(A)), Mr. Cheng mostly just cites online articles. *See* Pl's SoF ¶¶ 11, 14, 21, 22. In total, Mr. Cheng's counsel appends no fewer than twelve online articles as exhibits to his declaration. Wolman Decl. ¶¶ 6, 7, 9-11, 13-18, 21. None of these articles are record evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). None of them are even admissible. *See, e.g., Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007) (granting motion to strike and explaining: "Newspaper articles offered for the truth of the matter asserted are inadmissible hearsay," and "[t]he body of law on the exclusion of hearsay in summary judgment motions is rather copious and consistent."); *Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*, No. 16 CIV. 3086 (KPF), 2019 WL 4857468, at *12 (S.D.N.Y. Oct. 2, 2019) (declining to consider website comments on summary judgment). All of this "evidence," along with the related "factual" assertions, should be disregarded.[7]

---

[7] Although this result would usually be accomplished by disregarding the Rule 56.1 Statement, Mr. Cheng's Motion does not cite his Rule 56.1 Statement at all, and his Rule 56.1 Statement does

Quite obviously, the facts that Mr. Cheng represents as "undisputed" in his Rule 56.1 Statement and then proceeds to dispute in his Motion should also be disregarded. *Compare, e.g.,* Pl's SoF ¶ 11 ("Defendant Guo is a billionaire.") *with* Pl's Mot. at 2 ("By most accounts, Guo is a billionaire. Guo's story, however, is full of contradictions."). So should the statements that contain multiple factual assertions, in violation of this Court's Individual Practices. *See* Indiv. R. 5(C)(ii).

Indeed, Mr. Cheng's Rule 56.1 Statement violates the relevant procedural rules in myriad ways, although these violations are not the only problem. Mr. Cheng's counsel's actions also indicate bad faith. In his Rule 56.1 Statement, Mr. Cheng demands that Mr. Guo admit or deny the same "facts" as to which he declined to testify during his deposition, even though these "facts" are wholly irrelevant to his Motion, and Mr. Cheng's counsel acknowledged that Mr. Guo had invoked his Fifth Amendment rights. *See, e.g.,* Pl's SoF ¶ 11 (asserting that "Guo is a billionaire"); *id.* at ¶ 12 (acknowledging that, when asked about "his assets and income, Guo declined to testify, invoking his rights under the Fifth Amendment"). If Mr. Cheng's counsel's effort to disturb Mr. Guo's Constitutional rights is patently improper, so are his summary judgment papers, which amount to a hit piece on Mr. Guo labeled as a motion. And given that Mr. Cheng's only "evidence" for this smear campaign amounts to online articles, which Mr. Cheng's counsel—attorneys with decades of experience—well knew was inadmissible, there is no possible justification. But there is an explanation. Mr. Cheng's counsel also knew that Mr. Guo would have no choice but to respond to each immaterial assertion, along with each piece of inadmissible evidence, which would multiply Mr. Guo's attorneys' fees—again.[8] Since Mr. Cheng's counsel's actions were advanced

---

not cite three of the articles. It is also worth noting that the Argument section of Mr. Cheng's Motion does not cite any of these articles. Clearly, Mr. Cheng's counsel knows they are irrelevant.

[8] By way of examples only, Mr. Cheng served no fewer than 144 absurdly overbroad discovery requests on Mr. Guo, which the Court characterized as "ridiculous" and "beyond the pale" (ECF

for an improper purpose, the Court should award Mr. Guo the attorneys' fees he was forced to incur to respond to these improper papers. *See* Fed. R. Civ. P. 56(h); *see also, e.g., Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 363–64 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (awarding attorneys' fees when attorneys' actions "were so lacking in merit as to amount to bad faith and vexatiously multiplied the proceedings").

## II.   This Court Should Grant Mr. Guo's Motion for Summary Judgment.

### A. Compensatory Damages.

#### 1. Mr. Cheng Should be Precluded from Introducing Evidence of Damages.

"The disclosure obligations imposed by Federal Rule of Civil Procedure 26 are designed to prevent parties from 'sandbagging' their adversaries." *Agence France Presse v. Morel*, 293 F.R.D. 682, 683 (S.D.N.Y. 2013) (citations omitted). As is evident from its plain text, "the Rule requires each party to disclose, as part of its initial disclosures during discovery, a 'computation of each category of damages' claimed." *Id*. (citing Fed. R. Civ. P. 26 (a)(1)(A)(iii)). It also requires a party to disclose "the documents or other evidentiary material" "upon which each computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("[B]y its very terms Rule 26(a) requires … a 'computation,' supported by documents."). Indisputably, Mr. Cheng did not disclose a computation of his claimed damages. Gavenman Decl. Ex. C.[9] Indeed, Mr. Cheng made clear that his damages were "yet to be

No. 29 at 17:20-25), and continued pressing his claim for malicious prosecution for more than a year after Mr. Guo advised him that it failed as a matter of law. *See* ECF Nos. 21 & 77.

[9] As noted *supra*, Mr. Cheng only "disclosed" the amount of the Nevada Judgment, which was set forth in his Complaint (Gavenman Decl. Ex. C at 2) and had already been paid. Moreover, although Mr. Cheng purported to reserve the "right" to "supplement" his disclosures (*id*.), Mr. Cheng clearly had the *obligation* to supplement this information. *See Morel*, 293 F.R.D. at 683; *see also* Fed. R. Civ. P. 26(e)(1)(A)). Mr. Cheng never did so. Gavenman Decl. ¶ 6.

calculated." *Id.* at 2. Mr. Cheng also failed to disclose any documents upon which his (nonexistent) calculations were based. Gavenman Decl. ¶¶ 5-8. The case law is clear: Mr. Cheng should be precluded from introducing any evidence of compensatory damages for these reasons alone. *See, e.g., Design Strategy*, 469 F.3d at 295-96 (affirming decision precluding plaintiff from proving lost profits when plaintiff failed to disclose damages calculation or supporting documents); *Spotnana, Inc. v. American Talent Agency, Inc.*, No. 1:09-cv-03698, 2010 WL 3341837, at \*1-2 (S.D.N.Y. Aug. 17, 2010) (precluding defendants from introducing evidence of damages because they failed to provide damages calculation); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (same); *24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F. Supp. 2d 305, 317-18 (S.D.N.Y. 2008) (same); *Morel*, 293 F.R.D. at 685 (same).

Mr. Cheng should also be precluded from introducing such evidence for another reason: he refused to provide it upon Mr. Guo's request. As the Second Circuit has emphasized, Rule 26 "requires a party to provide a computation of any category of damages voluntarily, i.e., 'without awaiting a discovery request.'" *Design Strategy*, 469 F.3d at 295. And as the Second Circuit has held, a party's "failure to comply with this requirement" is "especially troubling" when the other party "specifically requested a calculation of damages." *Id.* In his Interrogatories, Mr. Guo specifically requested such a calculation. Gavenman Decl. Ex. D. Mr. Cheng refused to provide it. *Id.* Instead, he conceded that his damages were not even subject to calculation. *Id.*[10]

Notably, Mr. Cheng also refused to respond to Mr. Guo's other Interrogatories related to his claimed damages. *See id.* (Response Nos. 4, 5, 6, 7, 8, 9). Mr. Cheng similarly failed to produce any documents related to his compensatory damages, although Mr. Guo specifically requested

---

[10] To the extent Mr. Cheng would contend otherwise, Mr. Guo was not obligated to push Mr. Cheng for further response. Indeed, Mr. Guo would have had no grounds to move to compel Mr. Cheng to provide a calculation of damages that, according to Mr. Cheng, could not be calculated.

these documents (to the extent any exist), too. *See* Gavenman Decl. ¶¶ 11-13 & Ex. E. In light of Mr. Guo's multiple requests, Mr. Cheng's refusal to provide this basic information cannot possibly be excused as unintentional. *See Morel*, 293 F.R.D. at 688 ("while a party's failure to disclose information of its own accord might be excused as a mere oversight, Plaintiff's failure to do so in response to Defendant's specific requests suggests both greater prejudice to Defendants and greater culpability on Plaintiff's part"). That much is also evident, given that, during his deposition, which took place more than three months after his initial disclosures were due, Mr. Cheng admitted that he *still* had not even *made* any damages calculations. *See* Cheng Dep. 84:12-16, 85:9-86:22. At the same time, Mr. Cheng stated that documents identifying financial loss to the Fortune Hotel "may" be found at that hotel (*id*. at 28:4-14) and did not deviate from his previous representation that "such documents are still being identified." *See id*. at 28:4-14; *see also* Gavenman Ex. B (Response No. 2). Mr. Cheng never produced any such documents. Gavenman Decl. ¶ 15.

Most importantly, even if Mr. Cheng had produced these documents (he did not), or any other documents related to his damages (he did not), it would still not excuse his failure to provide a damages calculation. *See Morel*, 293 F.R.D. at 684-85 ("As other courts have reasoned, even a party's own production of documents supporting its theory of damages cannot excuse that party from its separate obligation to disclose a damages computation"). Given his indisputable failure to provide a damages calculation, Mr. Cheng can avoid the sanction of preclusion only if he can show that his violation was "substantially justified or harmless." *Id*. at 685; *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information … required by Rule 26(a)," the party cannot use that information at trial, "unless the failure was substantially justified or harmless"). For all of the above-described reasons, Mr. Cheng cannot viably argue that his violation was justified. Nor was it harmless, when discovery closed more than two months ago (ECF No. 65), and it would have to

be reopened for Mr. Guo to respond to any calculation. *See Spotnana*, 2010 WL 3341837, at *2 ("prejudice ... is particularly great because discovery, which closed over four months ago, would have to be reopened for [plaintiff] appropriately to respond to [defendant's] damages calculations"). Not only would Mr. Guo be severely prejudiced by any reopening of discovery (*see id*.), but it is particularly unjustifiable under these circumstances, when discovery has already been extended three times, at Mr. Cheng's request. ECF Nos. 64, 65. Since Mr. Cheng had ample opportunity to adhere to his disclosure obligations and refused to do so, he should be precluded from introducing any evidence of compensatory damages. And because Mr. Cheng cannot recover punitive damages without compensatory damages, *Sprouse v. Wentz*, 105 Nev. 597, 602 (1989), the Court should grant Mr. Guo's Motion and dismiss Mr. Cheng's damages claims out of hand.

### 2. Mr. Cheng Cannot Establish Any of His Claimed Damages Regardless.

#### a. Mr. Cheng Lacks Standing to Recover Damages to "His" Businesses.

Even if Mr. Cheng could introduce evidence of his claimed compensatory damages, he could not recover any of them, including his "business" damages. Although Mr. Cheng testified that Mr. Guo's actions caused "his" hotel and his media businesses to suffer losses (Cheng Dep. 30:5-32:8, 36:14-24, 85:15-86:22), Mr. Cheng vigorously argued—and attested—that he does not own or operate that hotel. Gavenman Decl. Ex. A; Gavenman Decl. Ex. B at ¶ 32. Self-evidently, Mr. Cheng cannot recover damages to a hotel that he has nothing to do with. And even assuming, *arguendo*, that Mr. Cheng did own the Fortune Hotel (despite his sworn statement to the contrary), he could not recover for any harm suffered by any of "his" businesses. Mr. Cheng lacks standing.

Under Nevada law, "a party generally has standing to assert only its own rights and cannot raise the claims of a third party not before the court." *Beazer Homes Holding Corp. v. Dist. Ct.*, 128 Nev. 723, 730-31 (2012). The same is true under federal law. *See Levin v. American Document*

*Servs., LLC*, 828 F. App'x 788, 791-92 (2d Cir. 2020) (a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (same). To that end, an individual lacks standing to raise claims for damages suffered by non-party businesses, even if he owns them. *See, e.g., Jones v. Niagara Frontier Transportation Authority (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987) (affirming decision dismissing individual plaintiff's claims, and explaining: "A shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation."); *Feinberg v. Katz*, No. 99 Civ. 0045 (CSH), 2005 WL 2990633, at *4-5 (S.D.N.Y. Nov. 7, 2005) (dismissing plaintiff's claims brought in his individual capacity for the same reason); *Israyelyan v. Chavez*, 466 P.3d 939, 2020 WL 3603743, at *3 (Nev. 2020) (unpublished) (holding that an individual lacks standing to recover damages for injuries suffered by non-party businesses); *Mona v. Eighth Judicial District Court of State in and for County of Clark*, 132 Nev. 719, 727-30 (2016) (holding that personal bank accounts could not be subject to execution where petitioner was sued in representative capacity as trustee rather than in individual capacity). As neither the Fortune Hotel nor any other business is a party to this suit, even if Mr. Cheng had adduced any competent evidence to show some harm to these businesses (he did not), Mr. Cheng could not recover such damages. *See id*. Further, as explained below, Mr. Cheng adduced no such evidence.

### b. The Record is Devoid of Evidence to Support Compensatory Damages.

Even if Mr. Cheng were permitted to introduce evidence of his compensatory damages, the record is devoid of evidence to support his compensatory damages claim. Again, Mr. Cheng never produced documents related to these damages (Gavenman Decl. ¶¶ 11-13, 15); moreover, he conceded that his damages were not subject to calculation. Gavenman Decl. Ex. E (No. 6). Put differently, Mr. Cheng admitted that his compensatory damages claim is purely speculative, and

he has no actual evidence to support it regardless. The Court should grant Mr. Guo's Motion for this reason alone. *See, e.g., Sutherland v. State Farm Mut. Auto. Ins. Co.*, 133 Nev. 1080, 2017 WL 4996835, at *2-3 (Nev. App. 2017) (unpublished) (affirming decision granting summary judgment for defendant and explaining that "claims of possible damages, without any actual evidence of damages, is purely speculative and therefore insufficient to defeat summary judgment"); *Carter v. Nevada Sys. of Higher Educ.*, 461 P.3d 172, at *2-3 (Nev. App. 2020) (unpublished) (reaching the same result for the same reasons).

This Court should also grant Mr. Guo's Motion for another, related reason: no reasonable jury could find that the Nevada Lawsuit caused Mr. Cheng's harm. "Proximate cause is defined as any cause which in natural foreseeable and continuous sequence unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Clark Cty. Sch. Dist. v. Payo*, 133 Nev. 626, 636 (2017) (cleaned up). Mr. Cheng repeatedly testified that all of his supposed harm was caused by the 2018 Video. *See* Cheng Dep. 29:8-31:6, 31:21-32:8, 32:22-34:4, 36:4-40:18, 71:6-23. And if Mr. Cheng, in response to his counsel's persistent questioning, eventually suggested this harm was somehow exacerbated by the Nevada Lawsuit, according to Mr. Cheng, that was because Mr. Guo had sued him for $100 million dollars (*id*. at 89:9-92:11), which is blatantly false. Mr. Guo sued Mr. Cheng for $15,000. ECF No. 1-1 at 20. In light of Mr. Cheng's testimony that the bulk of his "injuries" had nothing to do with the Nevada Lawsuit and the rest of them were caused by something that indisputably never happened, there is simply no evidence in the record to suggest that the Nevada Lawsuit caused him to suffer any harm whatsoever. *See, e.g., Clark County*, 133 Nev. at 636-38 (overturning jury verdict when evidence was insufficient for jury to have reasonably found that defendant's conduct proximately caused plaintiff's injury); *Rea v. Sunrise Hospital & Medical Ctr.*, 132 Nev. 1021,

2016 WL 6072428, at *3 (Nev. Ct. App. Oct. 11, 2016) (unpublished) (affirming summary judgment for defendant when plaintiff failed to establish genuine issue of fact as to causation).

Even Mr. Cheng recognizes as much. For that reason, although Mr. Cheng insists that he is "entitled" to compensatory damages, he offers no actual evidence of such damages. Mr. Cheng just offers conclusory, speculative assertions; as support, he cites (and mischaracterizes) his own conclusory, speculative testimony. *See* Pl's Mot. at 10. Because he has no evidence of compensatory damages, let alone causation, Mr. Cheng resorts to arguing that the Nevada attorneys' fees award constitutes compensatory damages. *See id.*; *see also* Pl's Mot. at 14, n.20. But as the plain text of the relevant statute, which distinguishes compensatory damages from attorneys' fees, makes clear, Mr. Cheng is incorrect. *See* NRS § 41.670 (1)(c) ("The person against whom the action is brought may bring a separate action to recover: (1) Compensatory damages; (2) Punitive damages; and (3) Attorney's fees and costs"); *see also* NRS 41.670 (1)(a). And as Mr. Cheng points out: "Under Nevada law, 'a plain and unambiguous statute' is interpreted 'according to its ordinary meaning.'" Pl's Mot. at 9. Further, it is undisputed that Mr. Guo has already paid the Nevada attorneys' fee award and this claim was dismissed with prejudice (ECF No. 45), so it cannot be awarded as compensatory damages in this case. Because Mr. Cheng has utterly failed to adduce competent evidence to support his claim for compensatory damages, the Court should grant summary judgment for Mr. Guo and dismiss Mr. Cheng's compensatory damages claim.

### B. Punitive Damages.

Accordingly, Mr. Cheng's claim for punitive damages should also be dismissed. It is black-letter law that "punitive damages cannot be awarded unless compensatory damages are also awarded." *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 615 (2000); *see also, e.g., Sprouse*, 105 Nev. at 602 ("compensatory damages must be awarded before the court can award punitive

damages"); *Freedom Mortg. Corp. v. Kent*, No. 219CV01411APGDJA, 2020 WL 5096995, at *10 (D. Nev. Aug. 28, 2020) (dismissing punitive damages claim because compensatory damages claims were dismissed). Mr. Cheng's failure to adduce evidence of compensatory damages is fatal to his claim for punitive damages. But Mr. Cheng's claim for punitive damages fails regardless: it is unsupported by the record evidence. Under Nevada law, punitive damages may be awarded only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." *Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1127 (D. Nev. 2011). Accordingly, in order to obtain punitive damages, Mr. Cheng would need to prove, at minimum, that Mr. Guo acted with a culpable state of mind. *See* NRS § 42.001(3) ("'Malice' … means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others."); *see also* NRS § 42.001(1) ("'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences"); NRS § 42.001(4) ("Oppression is a conscious disregard for the rights of others constituting cruel and unjust hardship."); *Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 192 P.3d 243, 255 (Nev. 2008) ("conscious disregard … plainly requires evidence that a defendant acted with a culpable state of mind"). Nothing in the record comes close to supporting any such culpable intent on Mr. Guo's part. In sum: "Nevada law sets a high threshold for punitive damages, which [Mr. Cheng] cannot meet." *Villagomes*, 783 F. Supp. 2d at 1127 (granting defendant's motion for summary judgment when plaintiff "failed to present any evidence that [defendant] acted with implied malice or any level of culpable intent"). And once again, even Mr. Cheng recognizes as much.

Accordingly, in lieu of evidence, Mr. Cheng offers a novel proposition: that he is "automatically" "entitled" to punitive damages. Pl's Mot. at 10-12. Mr. Cheng is unequivocally

wrong. *See, e.g., Hernandez v. VanVeen*, No. 214CV1493JCMCWH, 2017 WL 4350664, at *4 (D. Nev. Sept. 29, 2017) (granting summary judgment for defendant on issue of punitive damages, as "Plaintiff has not presented any evidence of oppression, fraud, or malice"); *Fernandez v. State Farm Mut. Auto. Ins. Co*., 338 F. Supp. 3d 1193, 1202 (D. Nev. 2018) (reaching the same result for the same reason). Once again, Mr. Cheng's own cited case—the same case that he cited in support of his first failed summary judgment attempt (ECF Nos. 20 & 21)—confirms as much. *See Adelson*, 417 F. Supp. 3d at 433 (denying summary judgment on issue of punitive damages and holding that "Plaintiffs must show that [Defendant] acted with oppression, fraud, or malice").

According to Mr. Cheng, however, that is beside the point, since the *Adelson* Court did not "consider" the arguments raised in his Motion. Pl's Mot. at 12, n.17. The *Adelson* Court considered (and cited) the relevant law; Mr. Cheng's "arguments" amount to asking this Court to ignore it and award him punitive damages as a matter of right. Although no clarification is necessary to explain the demerits of this position, the Nevada Supreme Court has provided it: "'A plaintiff is never entitled to punitive damages as a matter of right.'" *Evans*, 116 Nev. at 612 (citations omitted).

Mr. Cheng proceeds to argue that he is "entitled" to punitive damages regardless because "Guo acted with oppression and malice." Pl's Mot. at 12. But rather than pointing to any record evidence, Mr. Cheng just offers a series of assertions and broad-based legal principles (*id*. at 12-14), which cannot substitute for the evidence he lacks. As far as evidence, Mr. Cheng just notes that Mr. Guo has filed other defamation suits, then suggests this fact means that Mr. Guo's suit against Mr. Cheng must have been "baseless." Pl's Mot. at 12. But as Mr. Cheng's own cited case law confirms, "evidence that [a plaintiff] has filed suit against many other parties does not, by itself, prove that litigation is unjustified or baseless." *Arrivalstar S.A. v. Meitek Inc.*, No. CV1201225JVSRNBX, 2012 WL 12877983, at *5 (C.D. Cal. Nov. 20, 2012). It also does not

come close to proving Mr. Guo acted with culpable intent, particularly when the Court can take judicial notice of the fact that Mr. Guo obtained a favorable outcome in many of these suits.[11]

Mr. Cheng's additional "evidence" to try to show culpable intent—which consists of citing (and mischaracterizing) the Nevada court's decision, Mr. Guo's testimony that he "reviewed the complaint," and his own counsel's letter—likewise fails. *See* Pl's Mot. at 13-14. Taking this "evidence" in order, the Nevada court did not grant the anti-SLAPP Motion because Mr. Guo had "no evidence and no factual background to support his claims," as Mr. Cheng contends. *See id.* at 13. Rather, the Nevada court found that Mr. Cheng's statements were protected speech because: (1) Mr. Cheng had shown, by a preponderance of the evidence, that he had made his statements without knowing falsity; and (2) Mr. Guo had failed to provide the requisite evidence of actual malice. ECF No. 79-22 at 2-3. Nothing about this holding suggests that Mr. Guo acted with oppression or malice. *See id.* As to the (verified) complaint in the Nevada Lawsuit, Mr. Guo was obligated to review it. And if Mr. Guo "chose to proceed" with the Nevada Lawsuit after receiving a letter from Mr. Cheng's counsel "telling" him it "would be dismissed," the same can be said of countless other plaintiffs. Accepting Mr. Cheng's proposition that this fact alone establishes culpable intent would result in punitive damages being awarded as a matter of course—and without any proof of harm whatsoever. That is not the law. *See Dean Witter Reynolds*, 116 Nev. at 615.

In any event, Mr. Cheng should be judicially estopped from arguing that pursuing the Nevada Lawsuit indicates Mr. Guo's culpable intent. Three factors inform a judicial estoppel inquiry, *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363-64 (S.D.N.Y. 2011), and all of

---

[11] *Guo v. Lin*, 3:18-cv-02982-MGL (D.S.C. 2018); *Guo v. Stone*, 1:18-cv-20983 (S.D. Fla. 2018); *Guo v. Guo*, 1:18-cv-01064-TSE (E.D. Va. 2018); *Guo v. Yuan*, 2:18-cv-02276-SVW-JC (C.D. Cal. 2018); *Guo v. Chen*, 2:18-cv-03800-MCA-MAH (D.N.J. 2018); *Guo v. Xia*, 1:18-cv-000174-LO-TCB (E.D. Va. 2018); *Guo v. Liang*, Index No. 151428/2018 (Sup. Ct., N.Y. Cty., 2018).

them are met. Before the Nevada court, Mr. Cheng vigorously argued that the legal issues were so "complex" that he needed "attorneys intimately familiar with defamation and Anti-SLAPP issues." ECF No. 1-4 at 16-21. This position is clearly inconsistent with Mr. Cheng's position that Mr. Guo, who is not even an attorney, "knew" that the Nevada Lawsuit was meritless. The Nevada court also accepted Mr. Cheng's position and awarded him increased attorneys' fees as a result. ECF No. 1-5. For Mr. Cheng not to derive an unfair advantage from his about-face, which would be patently unfair to Mr. Guo, Mr. Cheng should be barred from advancing this position at all.

### III.    The Court Should Set a Briefing Schedule to Adjudicate Attorneys' Fees.

As Mr. Cheng observes, the relevant statute permits an award of attorneys' fees in these actions. But Mr. Cheng is not "entitled" to recover any attorneys' fees without compensatory damages—or most of his fees regardless. As to the fees incurred in pursuing the claims he chose to dismiss, Mr. Cheng stipulated them away. ECF No. 45 (dismissing claim for action on a foreign judgment with prejudice, "with each party to bear its own … attorney fees, as to that claim"); ECF No. 77 (dismissing malicious prosecution claim on same grounds). As to the attorneys' fees incurred in pursuing his only remaining claim, such fees must be reasonable. *See, e.g.,* ECF No. 1-5; *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016). Here, Mr. Cheng has lost at every turn, and his counsel has litigated this case in an unreasonable manner from the start. The Court should set a briefing schedule so that the parties may brief, and the Court may adjudicate, the amount of attorneys' fees, if any, to which Mr. Cheng is entitled.

### <u>CONCLUSION</u>

For the aforementioned reasons, Mr. Guo respectfully requests that this Court grant his Motion in its entirety and grant any further relief as this Court deems just and proper.

Dated: December 23, 2021
     North Bethesda, Maryland     Respectfully submitted,

**SCHULMAN BHATTACHARYA, LLC**

By:    <u>/s/ Jeffrey S. Gavenman</u>
         Jeffrey S. Gavenman (JG3738)
         Schulman Bhattacharya, LLC
         6116 Executive Blvd., Ste. 425
         North Bethesda, MD 20852
         Telephone: (240) 356-8550
         Email: jgavenman@schulmanbh.com

         *Counsel for Defendant Wengui Guo*