IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOGAN CHENG f/k/a Shuiyan Cheng, *Plaintiff*, -v- WENGUI GUO, *Defendant*. | 1:20-cv-05678-KPF |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jeffrey S. Gavenman
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Tel: (240) 356-8553
Fax: (240) 356-8558
jgavenman@schulmanbh.com

*Counsel for Defendant Wengui Guo*

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    I.    Cheng Cannot Establish Compensatory Damages. ............................................... 1

    II.   Cheng Cannot Establish Punitive Damages. ......................................................... 6

    III.  Cheng's Rule 56.1 Statement is Wholly Improper. ............................................ 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Allianz Ins. Co. v. Lerner*,
  416 F.3d 109 (2d Cir. 2005) .................................................................................................. 2

*Ave. Innovs., Inc. v. E. Mishan & Sons Inc.*,
  2019 WL 4857468 (S.D.N.Y. Oct. 2, 2019). ....................................................................... 10

*Banerjee v. Cont'l Inc., Inc.*,
  2018 WL 4469006 (D. Nev. Sept. 17, 2018). ........................................................................ 6

*Bongiovi v. Sullivan*,
  122 Nev. 556 (2006). ............................................................................................................. 4

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014) ................................................................................... 7

*Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*,
  213 P.3d 496 (Nev. 2009). .................................................................................................... 2

*Coker v. Sassone*,
  432 P.3d 746 (Nev. 2019). .................................................................................................... 5

*CVS Pharm., Inc. v. Press America, Inc.*,
  377 F. Supp. 3d 359 (S.D.N.Y. 2019) ................................................................................... 4

*Davis v. Beling*,
  278 P.3d 501 (Nev. 2012). .................................................................................................... 6

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) .................................................................................................. 2

*Evans v. Dean Witter Reynolds, Inc.*,
  5 P.3d 1043 (Nev. 2000). ...................................................................................................... 7

*Ferm v. McCarty*,
  2014 WL 6983234 (D. Nev. Dec. 9, 2014). .......................................................................... 3

*Frantz v. Johnson*,
  999 P.2d 351 (Nev. 2000). .................................................................................................... 5

*Gonzalez v. City of New York*,
  354 F. Supp. 2d 327 (S.D.N.Y. 2005) ................................................................................. 10

*Gould Paper Corp. v. Madisen Corp.*,
  614 F. Supp. 2d 485 (S.D.N.Y. 2009) ............................................................................... 3

*Johnson v. J. Walter Thompson U.S.A.*, LLC,
  2017 WL 5193153 (S.D.N.Y. Oct. 25, 2017). ............................................................. 1, 2

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998) ............................................................................................ 10

*Quinby v. WestLB AG*,
  2008 WL 3826695 (S.D.N.Y. Aug. 15, 2008). ................................................................ 3

*Rea v. Sunrise Hospital & Medical Ctr.*,
  132 Nev. 1021, 2016 WL 6072428 (Nev. Ct. App. Oct. 11, 2016) ............................ 5

*Spotnana, Inc. v. American Talent Agency, Inc.*,
  2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010). ................................................................ 3

*Tate v. State, Bd. of Med. Examiners*,
  2013 WL 715622 (Nev. 2013). .......................................................................................... 2

*Valenti v. Penn Mut. Life Ins. Co.*,
  850 F. Supp. 2d 445 (S.D.N.Y. 2012) ............................................................................ 10

*Villagomes v. Lab'y Corp. of Am.*,
  783 F. Supp. 2d 1121 (D. Nev. 2011). ............................................................................. 7

**Rules**

Fed. R. Civ. P. 37(c)(1). ............................................................................................................ 3

Defendant Wengui Guo ("Defendant" or "Guo") respectfully submits this reply in further support of his motion for partial summary judgment (ECF No. 83) (the "Motion").[1]

## ARGUMENT

### I. Cheng Cannot Establish Compensatory Damages.

As Guo explained in his Motion, Cheng should be precluded from introducing any evidence of compensatory damages: he never disclosed his damages calculations or any documents upon which his (nonexistent) calculations were based. *See* Def's Mot. at 6-9, 15-18. In response, Cheng does not dispute that he never provided any damages calculations or documents, despite Guo's repeated requests. Nor does Cheng endeavor to explain how Guo could possibly develop a defense to Cheng's damages claim when, even now, Guo has no idea what amount of damages he is allegedly responsible for—or what documents, if any, Cheng might try to use to prove them.

Instead, Cheng brushes past most of his claimed damages to assert that "[n]o calculation of damages is required where a plaintiff seeks 'garden variety emotional distress damages or compensation for general reputational injury,' and where a plaintiff does not intend to seek a specific-dollar recovery." Opp. at 2. As support, Cheng cites *Johnson v. J. Walter Thompson U.S.A., LLC*, where the Court granted a motion to compel in part and ordered the plaintiff, who had brought a retaliation claim under federal law, to "produce a damages calculation for emotional distress and reputational injury [] insofar as she seeks 'special' damages," such as "*compensation for specific lost job opportunities*." 2017 WL 5193153, at *2 (S.D.N.Y. Oct. 25, 2017) (emphasis added). The Court declined to order the plaintiff to produce calculations "to the extent" she sought to recover for "garden variety emotional distress" or "general reputational injury," because "no

---

[1] Guo adopts the same terms used in his Motion ("Def's Mot."), including with respect to Plaintiff Logan Cheng's ("Cheng") motion for partial summary judgment (ECF No. 78) ("Pl's Mot."). Guo cites to Cheng's reply and opposition (ECF No. 88) as "Opp."

1

'calculation' would be meaningful." *Id*. To the extent this decision indicates anything, it is that the rest of Cheng's claimed damages, including any "lost opportunities," were indeed subject to calculation—and Cheng was obligated to disclose them. Notably, Cheng never argues otherwise.

Cheng merely points out that he provided "written discovery responses" and testified "about the nature of [his] injuries" (Opp. at 3-4), which misses the point. Rule 26 requires a *calculation*. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006). Since Rule 26 also requires a party to disclose its calculation "voluntarily" (*id*.), Cheng's effort to fault Guo for declining to file a motion to compel is equally misplaced. Particularly when Guo repeatedly asked Cheng for his damages calculations, and Cheng stated both that he could—and could not—calculate his damages. ECF No. 84-6 at 4 ("All other categories of damages are not subject to any particular method of calculation."); Cheng Dep. at 85:15-22 ("The hotel's loss … can be calculated. The media investment can also be calculated, and also the project of casino hotel, the preliminary investment, that also can be calculated."). Cheng offers no explanation for his failure to provide these calculations. Instead, he conveniently reverts back to his original position: that his damages "are not susceptible to mathematical calculation." Opp. at 4.[2]

Cheng now complains that precluding him from proving compensatory damages is a "drastic sanction," and one that is "contrary to Nevada law" and "notions of due process." Opp. at 3-4. Nevada law is inapplicable. *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005) ("state procedural rules do not apply [] to a federal court sitting in diversity"). And due process

---

[2] Cheng relegates his standing argument to a footnote, where he maintains he can recover for "his" hotel's losses because "he is seeking to recover for injury 'in his business or profession.'" As support, Cheng cites an unpublished decision that does not even address standing; it merely recites the elements of defamation. *See Tate v. State, Bd. of Med. Examiners*, 2013 WL 715622, at *3 (Nev. 2013). Cheng inexplicably insists that holding him to the basic requirement of standing would "foreclose" "*per se* defamation" damages. For claims of defamation *per se*, damages are presumed. *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc*., 213 P.3d 496, 503 (Nev. 2009).

cannot help Cheng avoid the sanction of preclusion, particularly when, whether "drastic" or not, the sanction is quite clearly spelled out in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(c)(1). It is also clearly laid out in the relevant (federal) case law, which confirms that where, as here, a party "disregards its discovery obligations without any explanation at all," the party should be precluded from proving its damages, even if it "may be denied any recovery as a result." *Spotnana, Inc. v. American Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010). As the case law also confirms, Cheng's contention that this argument is "improperly raised on summary judgment" (Opp. at 4, n.2) is simply incorrect. *See Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (resolving motions for summary judgment and holding that defendant was precluded from proving damages).

The record is devoid of evidence to support damages regardless. Although Cheng insists that he "extensively documented his damages," as he admits, at most, all he ever really did was "discuss" some of them. Opp. at 4. As to his supposed "emotional distress" and "reputational injury," Cheng essentially offered two statements: "I am now very depressed," and "my reputation suffered." Cheng Dep. 38:13-18. Cheng did not testify that he had suffered any physical manifestation of his harm. Further, Cheng did not offer any corroborating evidence of his harms or disclose any witnesses[3] who might do so. Cheng's only evidence is therefore insufficient as a matter of law. *See, e.g.*, *Quinby v. WestLB AG*, 2008 WL 3826695, at *3 (S.D.N.Y. Aug. 15, 2008) ("To obtain emotional distress damages, a plaintiff must establish actual injury and the award must be 'supported by competent evidence' in addition to a plaintiff's subjective testimony."); *Ferm v. McCarty*, 2014 WL 6983234, at *8 (D. Nev. Dec. 9, 2014) (granting motion to dismiss and holding

---

[3] Cheng only disclosed Luyin Zeng to speak on the topic of his claimed damages. ECF Nos. 84-5, 84-6, 84-7. As the accountant for the Fortune Hotel, Ms. Zeng's knowledge was limited to the (unrecoverable) losses supposedly suffered by the Fortune Hotel. ECF No. 84-8 at 26:4-28:14.

3

that depression was not physical manifestation); *Bongiovi v. Sullivan*, 122 Nev. 556, 568, 578 (2006) (upholding emotional distress and reputational damages award when multiple witnesses offered corroborating testimony). Because Cheng does not oppose Guo's argument that he needed to disclose calculations for the rest of his damages, the analysis can end here: the Court should grant Guo's Motion. *See CVS Pharm., Inc. v. Press America, Inc.*, 377 F. Supp. 3d 359, 383 (S.D.N.Y. 2019) (plaintiff conceded argument on summary judgment by failing to oppose it).

If the Court is inclined to probe further, then it should grant Guo's Motion for another reason: Cheng has provided no evidence whatsoever that the Nevada Lawsuit caused any of his claimed compensatory damages. For that reason, Cheng's entire argument that "Guo's actions proximately caused [his] harm" is devoid of evidentiary support. Opp. at 4-6. Cheng's contention that his "testimony sufficiently separates the harm caused by the lawsuit" from the "harm caused by Guo's video" (*id.* at 5) is also unsupported, and it finds no support in Cheng's testimony, where his only effort to separate these two supposed harms consisted of stating: "it's just like the damage was just gradually, you know, suffered." Cheng Dep. 84:8-11. When his counsel asked him if he was "able to separate the two" harms, Cheng responded: "the true harm started from the lawsuit … then it was exacerbated by the lawsuit." *Id.* at 90:14-17.

If Cheng's testimony on this point is nonsensical, there is an explanation for it. Per Cheng, his damages have nothing to do with the Nevada Lawsuit: he brought this action to recover for the damages that he had suffered as a result of Guo's video. Cheng Dep. 71:6-23. Again and again, Cheng reiterated that the video alone had caused his harm (*id.* at 29:8-31:6, 31:21-32:8, 32:22-34:4, 36:4-40:18, 71:6-23), and that the Nevada Lawsuit had "nothing to do with" this case. *Id.* at 51:16-24, 55:20-56:9, 70:7-15, 71:24-72:13. At his own counsel's prodding, Cheng finally agreed

4

his damages were somehow "exacerbated" by the Nevada Lawsuit—because Guo had sued him for $100 million dollars (*id.* at 89:9-92:11), which is patently false. ECF No. 1-1 at 20.

Recognizing that he has no evidence of causation, Cheng just offers a statement: "Causation is a jury question and may be inferred from circumstantial evidence[.]" Opp. at 5. As support, Cheng cites *Frantz v. Johnson*, where the Court affirmed a jury verdict and held that causation could be inferred from circumstantial evidence for misappropriation of trade secrets claims. 999 P.2d 351, 359 (Nev. 2000). Cheng's reliance on this case is inexplicable. No such claim is at issue, and Cheng has no circumstantial evidence. He only has his own (direct) testimony. Asserting that causation is usually a jury question also does nothing for Cheng, when his testimony is plainly insufficient for a jury to reasonably find that the Nevada Lawsuit caused his claimed harm. *See, e.g., Rea v. Sunrise Hosp. & Med. Ctr.*, 132 Nev. 1021, 2016 WL 6072428, at *3 (Nev. Ct. App. Oct. 11, 2016) (unpublished) (affirming summary judgment for defendant when plaintiff failed to show genuine fact issue as to causation).

In a futile effort to argue otherwise, Cheng accuses Guo of "misleadingly argu[ing] that he was only seeking $15,000" in the Nevada Lawsuit when, in reality, he sought damages "*in excess of $15,000.*" Opp. at 5. Guo expressly stated that he "requested 'damages in excess of $15,000.'" Def's Mot. at 9. This amount (still) is simply not $100 million. Cheng tries again: the Nevada Lawsuit must have caused him "harm" because "the Nevada Supreme Court has observed that a SLAPP suit's aim is to 'chill a defendant's exercise of his or her First Amendment free speech rights.'" Opp. at 5. The Nevada Supreme Court has since held that "courts determining whether conduct is protected under [the SLAPP statute] must look to statutory definitions, as opposed to general principles of First Amendment law." *Coker v. Sassone*, 432 P.3d 746, 751 (Nev. 2019). Still, Cheng maintains that he must have been harmed because SLAPP suits are "filed to obtain a

financial advantage over one's adversary by increasing litigation costs." Opp. at 5. That is why the SLAPP statute mandates awards of litigation costs. *See* NRS 41.670. As explained below, if the litigation costs awarded by the Nevada court suggest that Cheng was "harmed," in a general sense, this award did not constitute compensatory damages in that case, let alone in this one.

## II. Cheng Cannot Establish Punitive Damages.

Because he has no actual evidence of compensatory damages, to advocate for his entitlement to punitive damages, Cheng asks the Court to find that the Nevada Judgment constitutes compensatory damages instead. But the Nevada Judgment is clearly not compensatory. Compensatory damages are awarded "to compensate for a proven injury or loss." *Davis v. Beling*, 278 P.3d 501, 512 (Nev. 2012). And the Nevada court did not award Cheng increased attorneys' fees—beyond what he paid—to compensate him. *See* ECF No. 1-5 at 9. The same is true of the $10,000 statutory penalty, since Cheng never spent this money, either. *See id*. As the Nevada court explained, it awarded these sums not to compensate Cheng, but to "deter" Guo. *Id*.

Indeed, Cheng *asked* the Nevada court for the $10,000 statutory award as a "deterrent." ECF No. 1-2 at 2, 21. Cheng now reverses course to deem this award "functionally-compensatory." Opp. at 8. As support, Cheng cites *Banerjee v. Cont'l Inc., Inc.*, 2018 WL 4469006 (D. Nev. Sept. 17, 2018), which indicates otherwise. There, the Court evaluated whether a statutory award was warranted and found it was not. *Id*. at *6. In doing so, the Court also observed that "the statutory damage award in the original action may be the *analog* to compensatory and punitive damages *recoverable* in a separate action," then reasoned: "it appears the $10,000 statutory award is aimed at frivolous or vexatious conduct *that warrants a type of punitive (and perhaps in the right case, compensatory) award*." *Id*. (emphasis added). As is evident from the Nevada Judgment, this

6

$10,000 award was of the punitive type. And as *Banerjee* confirms, to obtain any "recoverable" damages in this case, Cheng needed to adduce evidence of them. Cheng failed to do so.

Although Cheng maintains that at least the attorneys' fees awarded by the Nevada court constitute compensatory damages, this argument fails for all of the above reasons, plus one more: attorneys' fees are not "typically considered compensatory damages." Opp. at 7. For his proposition that this Court should view these already-awarded attorneys' fees as compensatory damages regardless, Cheng cites no support. Cheng merely recites the "goal" of the SLAPP statute (again). Opp. at 7. And again, the SLAPP statute cannot transform the Nevada Judgment into the compensatory damages award it is not. Nor can it substitute for the evidence that Cheng lacks. Because punitive damages cannot be awarded without compensatory damages, *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1054 (Nev. 2000), Cheng's failure to adduce evidence of his compensatory damages is fatal to his punitive damages claim.

Cheng's punitive damages claim fails for another reason: it is unsupported by any evidence. Under Nevada law, punitive damages may be awarded only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." *Villagomes v. Lab'y Corp. of Am.*, 783 F. Supp. 2d 1121, 1127 (D. Nev. 2011). Because Cheng has no such evidence, once again, he cites none. Instead, Cheng resorts to arguing that the anti-SLAPP Order itself constitutes "evidence" that Guo "acted with malice." Opp. at 8. But the anti-SLAPP Order is not evidence of anything, other than the fact that it was entered and contains the statements it contains. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 605 (S.D.N.Y. 2014) (holding the same with respect to court decisions and rejecting defendants' efforts to rely on these decisions "as evidence of facts or conclusions they stated," which the Court characterized as an attempt to "breathe … legal effect into … court decisions without calling their arguments what in substance

7

they are: a collateral estoppel defense"). To the extent that Cheng meant to argue that the findings in the anti-SLAPP Order have collateral estoppel effect, which would at least be a legally cognizable argument, the Nevada court never found that Guo acted with malice (or any intent). ECF No. 79-22. The Nevada court never even passed upon the issue.

Cheng never argues otherwise. Instead, he just restates the exact same points that he already tried to make in his Motion (Pl's Mot. at 12-14), which remain deficient for the exact same reasons. *See* Def's Mot. at 23-24. Reiterating that Guo reviewed the Nevada complaint before it was filed, that Guo has filed (and won) other defamation suits, and that Guo proceeded with the Nevada Lawsuit after Cheng asked him to dismiss it still does not evidence Guo's culpable intent.

Having tried and failed to remediate his evidentiary deficiencies with a court decision, Cheng broadly contends that "Guo's refusal to answer questions relating to his motivations for filing the lawsuit and the funding of the lawsuit support a negative inference by a jury which would warrant an award of punitive damages." Opp. at 9. Cheng declines to explain how the possibility of an adverse inference by a prospective jury could aid his efforts to get to the jury. Cheng does not even articulate what an adverse inference instruction would look like. Nor does he ask the Court to apply an adverse inference on summary judgment. To the extent that Cheng meant to do so, such an argument would have been unavailing, for four critical reasons.

*First*, Guo did not refuse to answer questions relating to his motivations for filing the Nevada Lawsuit. To the contrary, Guo discussed his motivations at length. *See, e.g.*, Guo Dep. at 112:11-18, 113:12-17, 114:1-11, 130:25-131:21 (explaining that his goal in filing the Nevada Lawsuit "was only to try to stop" Cheng from continuing to make false accusations). Moreover, Guo did not invoke attorney-client privilege "improperly," as Cheng contends. Opp. at 9. The

8

Court expressly rejected this argument the last time Cheng made it—and held that all of Guo's invocations of attorney-client privilege were entirely proper. ECF No. 56.

*Second*, although Guo (properly) invoked his Fifth Amendment rights and declined to testify about "the funding of the lawsuit" or his "relationship with Golden Spring," Cheng was not deprived of this information. As Cheng well knows, he insisted that he needed discovery from Golden Spring for this very reason: so that he could determine the "relationship between Guo and Golden Spring [] as to why and how the underlying case was brought." ECF No. 62 at 23:4-7. Cheng was clear: this discovery bore directly on Guo's "motive and malice," Golden Spring had this "knowledge," and Cheng needed it to determine "whether or not there's an entitlement to punitive damages." *Id*. at 3:17-24, 7:4-12. The Court agreed. *Id*. 26:12-28:16, 31:5-9. Cheng proceeded to take this discovery, and he never suggested it was insufficient. Nor did he request further depositions, although the Court specifically invited him to do so. ECF No. 62 at 26:21-25.

As is by now evident, Cheng had ample opportunity to probe Guo's motives, his relationship with Golden Spring, "why" Golden Spring pays his litigation bills, and every other possible aspect of "why and how" the Nevada Litigation was brought. An adverse inference is proper only when "litigants [are] denied discovery based upon the assertion of the privilege" (Opp. at 10), and Cheng was not denied any discovery as to Guo's motivations. Cheng got what he asked for, and he never asked for more. If it "appears" to Cheng that the Nevada Lawsuit was filed for an improper purpose (Opp. at 10), Cheng's opinion does not entitle him to an adverse inference.

*Third*, even if the Court could draw an adverse inference, despite Cheng's failure to request one, an adverse inference would be proper only as to the information of which Cheng was deprived, which concerns Guo's assets. *See* ECF No. 62 at 31:1-13. Since Guo's assets have no bearing on his motives, such evidence would not support Cheng's punitive damages claim. *Fourth*, even if an

9

adverse inference as to Guo's motives were proper (it is not), "an adverse inference standing alone cannot defeat a motion for summary judgment." *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 454 (S.D.N.Y. 2012). An adverse inference can only be used "at the margin," where a party has "some (not insubstantial) evidence in support of his claim." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). For all of the reasons above, this case is nowhere near the margin.

### III. Cheng's Rule 56.1 Statement is Wholly Improper.

Cheng buries his argument regarding his Rule 56.1 Statement in the bottom of his brief, which makes sense. Cheng's Rule 56.1 Statement is indefensible. When Cheng contends that he submitted these "facts" to "evidence the basis for punitive damages," he only makes Guo's point. None of these facts were properly before the Court on Cheng's Motion, which (supposedly) sought summary judgment solely on the issue of liability. Cheng proceeds to argue that the Court should consider these "facts" and his appended "evidence" regardless, because "they are necessary to establish facts that Guo [] avoided addressing." Opp. at 12. At the same time, Cheng admits that none of his "evidence" could possibly serve that purpose, since "it is not presented for the truth of the matter asserted." *Id*. By Cheng's own assessment, his "facts" and "evidence" are irrelevant. Cheng's articles are also inadmissible: they "contain out-of-court statements" that are plainly being "offered for the truth of the matter asserted, and are therefore plainly hearsay." *Ave. Innovs., Inc. v. E. Mishan & Sons Inc.*, 2019 WL 4857468, at *12 (S.D.N.Y. Oct. 2, 2019); *see also Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 347 (S.D.N.Y. 2005) ("articles are inadmissible hearsay and unusable to defeat summary judgment"). And although Cheng maintains that the articles are admissible under the "residual exception," Cheng is wrong. *See id*. (rejecting identical argument).

### CONCLUSION

For the aforementioned reasons, Guo respectfully requests that this Court grant his Motion.

Dated: February 15, 2022
     North Bethesda, Maryland       Respectfully submitted,

**SCHULMAN BHATTACHARYA, LLC**

By:   /s/ Jeffrey S. Gavenman
        Jeffrey S. Gavenman (JG3738)
        Schulman Bhattacharya, LLC
        6116 Executive Blvd., Ste. 425
        North Bethesda, MD 20852
        Telephone: (240) 356-8553
        Email: jgavenman@schulmanbh.com