UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOGAN CHENG, *formerly known as Shuiyan Cheng*,

                              Plaintiff,

               -v.-

WENGUI GUO,

                              Defendant.

20 Civ. 5678 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Logan Cheng brings this action against Defendant Wengui Guo, a public figure and purported billionaire who describes himself as a Chinese dissident.  After Plaintiff published several statements on Twitter that were critical of Defendant, Defendant sued Plaintiff for defamation, defamation *per se*, and intentional infliction of emotional distress in the Eighth Judicial District Court for Clark County, Nevada (the "Nevada Court").  The Nevada Court granted Plaintiff's special motion to dismiss the defamation action, as well as a subsequent motion seeking recovery of costs and attorney's fees.  In this litigation, Plaintiff seeks damages pursuant to Nevada's Anti-SLAPP statute, Sections 41.635 to 41.670 of the Nevada Revised Statutes.

Now before the Court are the parties' cross-motions for partial summary judgment.  Under Nevada law, a litigant who succeeds on a motion to dismiss under Nevada's anti-SLAPP statute "may bring a separate action to recover: [i] [c]ompensatory damages; [ii] [p]unitive damages; and [iii] [a]ttorney's fees and costs of bringing the separate action."  Nev. Rev. Stat. § 41.670(1)(c).

Accordingly, Plaintiff moves for partial summary judgment on the issue of liability.  As something of a mirror-image to Plaintiff's motion, Defendant seeks summary judgment on the issue of damages, asking this Court to find as a matter of law that Plaintiff is precluded from introducing evidence of his damages because: (i) Plaintiff failed to disclose his damages calculations or supporting documents during discovery; (ii) Plaintiff lacks standing to recover "business damages"; (iii) no evidence supports the award of compensatory or punitive damages; and (iv) Plaintiff should be judicially estopped from taking the position that Defendant's defamation action was so meritless as to indicate Defendant's culpable intent.  What is more, Defendant asks the Court to award Defendant certain attorney's fees, to dismiss with prejudice Plaintiff's claims for compensatory and punitive damages, and to set a briefing schedule to adjudicate the amount of attorney's fees (if any) to which Plaintiff is entitled. For the reasons that follow, the Court grants Plaintiff's motion with respect to compensatory damages and attorney's fees, denies Plaintiff's motion with respect to punitive damages, and denies Defendant's motion.

**BACKGROUND**[1]

**A.      Factual Background**

The parties vigorously debate the facts underlying this dispute, but only a narrow subset of those facts is relevant to the instant motion.  Plaintiff is a

---

[1]      This Opinion draws from Plaintiff's unredacted Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #81-2)); Defendant's unredacted Response and Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1(b) ("Def. 56.1 Reply" (Dkt. #86-1)); Defendant's Statement of Undisputed Material Facts

citizen of the State of California, and Defendant is a foreign national and a resident of the State of New York.  (Dkt. #1, ¶ 1).  Defendant describes himself as a Chinese political dissident who uses YouTube and Twitter to expose widespread corruption in the Chinese Communist Party and among senior officials of the Chinese Government.  (Pl. Br., Ex. 9 ¶¶ 5-6).  Plaintiff describes Defendant as a public figure and billionaire who claims to be a Chinese dissident, but who in fact has undermined the political movement he claims to support.  (Dkt. #1, ¶ 1).

Beginning in or about July 2018, Plaintiff posted several statements on Twitter accusing Defendant of fraud, espionage, money laundering, forgery, intimidation, and collusion with the Chinese government.  (Pl. Br., Ex. 9 at ¶ 17).  On August 9, 2018, Defendant filed suit against Plaintiff for defamation in the Nevada Court.  (Pl. 56.1 ¶ 4).  In response, Plaintiff filed a Special Motion to Dismiss pursuant to Nevada's Anti-SLAPP statute.  (Pl. Br., Ex. 22 at 4).[2]  As relevant here, Nev. Rev. Stat. § 41.660 creates a procedure for early dismissal

---

Pursuant to Local Civil Rule 56.1(a) ("Def. 56.1" (Dkt. #84-1)); and Plaintiff's Response and Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1(b) ("Pl. 56.1 Reply" (Dkt. #89-1)).  The Court also considers certain exhibits attached to each side's opening memorandum of law (cited using the convention, "[Party] Br., Ex. []").

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of his motion for partial summary judgment as "Pl. Br." (Dkt. #79); to Defendant's memorandum of law in support of his cross-motion for partial summary judgment and in opposition to Plaintiff's motion for summary judgment as "Def. Br." (Dkt. #84); to Plaintiff's reply in further support of his motion for partial summary judgment and in opposition to Defendant's cross-motion for partial summary judgment as "Pl. Reply" (Dkt. #89); and to Defendant's reply memorandum of law in further support of his cross-motion for partial summary judgment as "Def. Reply" (Dkt. #90).

[2]    "SLAPP" stands for "strategic lawsuit against public participation."  Anti-SLAPP laws are intended to prevent a party from using the courts to intimidate those who are exercising their First Amendment rights.  *See generally Nat'l Jewish Democratic Council* v. *Adelson*, 417 F. Supp. 3d 416, 421 (S.D.N.Y. 2019).

of cases that (i) are targeted at speech and conduct falling within certain specified categories and (ii) lack minimal merit. (*Id.* at 1-2). The statute creates a two-step analysis to assess such cases. (*Id.* at 2). First, the moving party must prove by a preponderance of the evidence that the non-movant's causes of action are based on statements that fall into one or more of the categories of "good faith communication[s] in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" set out in Nev. Rev. Stat. § 41.637. (*Id.*). If the moving party makes this showing, the burden then shifts to the non-movant to make a *prima facie* showing that it has a probability of prevailing on its claims. (*Id.*).

The Nevada Court found that Plaintiff satisfied his burden under the first prong, because (i) the statements on which Defendant's defamation action was based were all protected under Nevada law (Pl. Br., Ex. 22 at 2 (citing Nev. Rev. Stat. § 41.637(4) (protecting "[c]ommunication[s] made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood"))), and (ii) Plaintiff had demonstrated by a preponderance of the evidence that he made the statements without knowledge of their falsity (*id.*). Next, the Nevada Court found that Defendant had failed to make a *prima facie* showing that he had a probability of prevailing on his claims, because as a public figure, he was required to prove by "clear and convincing evidence" that Plaintiff's statements were made with "actual malice" — that is, with knowing falsity or a reckless disregard for the truth. (*Id.* (citing *N.Y. Times Co.* v. *Sullivan*, 376 U.S. 254

(1964))).  Plaintiff's statements were consistent with statements about Defendant that had been published in mainstream news publications, and the Nevada Court found that Plaintiff had no reason to doubt the veracity of these sources.  (*Id.*).  Accordingly, the Nevada Court granted Plaintiff's Special Motion to Dismiss; dismissed Defendant's claims with prejudice; and ordered that Plaintiff, as the prevailing party, was entitled to recover his costs and reasonable attorney's fees under Nev. Rev. Stat. § 41.670(1)(a) and could receive an award of up to $10,000 in damages under Section 41.670(1)(b).  (*Id.* at 3; *see also id.* at 6-8 (the "Dismissal Order")).

The Dismissal Order directed Plaintiff to file a motion for fees, costs, and damages within 21 days of the entry of the order.  (Pl. Br., Ex. 22 at 3). Plaintiff subsequently filed an unopposed motion for costs and attorney's fees. (Pl. Br., Ex. 24 at 1).  On June 4, 2020, the Nevada Court granted Plaintiff's motion, awarding him $1,984.84 in costs, $184,955.55 in attorneys' fees, and $10,000 in damages.  (*Id.* at 4-5).  Accordingly, the Nevada Court entered a final judgment against Defendant in the amount of $196,940.39.  (Pl. Br., Ex. 23 (the "Judgment")).

## B.    Procedural Background

Plaintiff commenced this action with the filing of a complaint (the "Complaint") on July 22, 2020.  (Dkt. #1 ("Compl.")).  In the Complaint, Plaintiff alleged three separate causes of action: (i) an anti-SLAPP action arising under Nev. Rev. Stat. § 41.670(1)(c) (Compl. ¶¶ 18-24), (ii) malicious prosecution in violation of Nevada common law (*id.* at ¶¶ 25-32), and (iii) enforcement of the

5

Judgment of the Nevada Court (*id.* at ¶¶ 33-41).  On July 30, 2020, Plaintiff filed an *ex parte* motion for alternate service, averring that Defendant was evading service of process.  (Dkt. #7, 8).  The following day, the Court denied Plaintiff's motion without prejudice to its renewal, noting, *inter alia*, that the action had been initiated only eight days prior, and that Plaintiff had offered no indication that he had inquired as to whether any of Defendant's attorneys was willing to accept service on Defendant's behalf.  (Dkt. #10).  On August 14, 2020, Plaintiff filed an affidavit of service indicating that service had been accepted by Defendant's doorman.  (Dkt. #13).

On September 2, 2020, Defendant filed his answer to Plaintiff's Complaint.  (Dkt. #19).  On October 1, 2020, Plaintiff filed a letter requesting a conference regarding his anticipated motion for partial summary judgment to enforce the Judgment.  (Dkt. #20).  On October 6, 2020, Defendant filed a letter in opposition, alleging that the day before Plaintiff filed his letter, Defendant had paid $80,000 toward the Judgment, and that defense counsel had informed Plaintiff's counsel that the remaining $116,940.39 would be wired to Plaintiff's counsel's trust account the following day.  (Dkt. #21).  Defendant stated that, as promised, he had paid the outstanding amount of the Judgment in full on October 1, 2020.  (*Id.*).  Based on the parties' representations, the Court converted the initial pretrial conference, then scheduled for October 22, 2020, into a pre-motion conference, asking the parties to be prepared to discuss, *inter alia*, why the Court had not been made aware of Defendant's payments in satisfaction of the Judgment.  (Dkt. #22).

On October 7, 2020, Plaintiff filed a letter explaining that Defendant's payments were relevant only to his third cause of action for enforcement of the Judgment. (Dkt. #23). Plaintiff further argued that because the parties continued to dispute whether the Judgment included pre- or post-judgment interest, enforcement of the Judgment remained a live issue. (*Id.* at 2). The Court held a pre-motion conference on October 22, 2020, at which it directed the parties to file a proposed civil case management plan. (*See* Minute Entry for Oct. 22, 2020). On November 6, 2020, the parties filed a joint letter and proposed civil case management plan, the latter of which the Court endorsed the same day. (Dkt. #24, 25).

On December 28, 2020, Defendant filed a letter requesting an informal conference regarding multiple issues with Plaintiff's discovery requests in this matter. (Dkt. #26). Plaintiff opposed this request on December 31, 2020. (Dkt. #27). On January 21, 2021, the Court held a conference regarding the parties' discovery disputes, in which it directed Plaintiff to revise his discovery request and directed the parties to file a joint letter informing the Court of any remaining points of disagreement. (*See* Minute Entry for Jan. 21, 2021). The parties filed that joint letter on February 26, 2021, with Defendant alerting the Court that he believed Plaintiff's remaining requests for production were "still overbroad, unduly burdensome, and untethered to the needs of this case." (Dkt. #32 at 1). The Court directed Plaintiff to respond to Defendant's letter, with the expectation that Plaintiff would "revise[] certain of his discovery requests to comport with the guidance given by the Court at the January 21,

7

2021 conference[.]" (Dkt. #34, 36).  Further, the Court granted an extension of the discovery deadlines in this case to allow the parties time to resolve the pending discovery disputes.  (Dkt. #39).  On March 8, 2021, Plaintiff filed his second revised requests for production.  (Dkt. #40).  Defendant did not raise any further disputes.  (*See* Dkt. #41).  On March 24, 2021, the parties filed a proposed stipulation and order dismissing Count III of the Complaint (for action on a foreign judgment) with prejudice.  (Dkt. #44).  The Court endorsed the stipulation on the same day.  (Dkt. #45).

Defendant was deposed on April 1, 2021.  (*See* Dkt. #52).  On April 2, 2021, three days before the then-scheduled fact discovery deadline, Plaintiff filed a letter requesting a second extension of the discovery deadlines in this matter to address certain disputes that had arisen in connection with Defendant's invocation of his Fifth Amendment right against self-incrimination during his deposition.  (Dkt. #46).  Defendant opposed Plaintiff's request on April 5, 2021 (Dkt. #47), and Plaintiff filed a reply letter that same day (Dkt. #48).  That same day, Court held a telephonic conference with the parties to discuss these issues, at which conference it requested an *in camera* submission from Defendant providing further detail on his assertions of his Fifth Amendment privilege.  (*See* Dkt. #52).  Defendant made the requested submission on April 15, 2021. (*See* Dkt. #51).  The Court carefully reviewed Defendant's *in camera* submission and the transcript of Defendant's April 1, 2021 deposition and found that Defendant had "reasonable cause to apprehend that answering the question[s] [would] provide the government with

evidence to fuel a criminal prosecution." (Dkt. #52 (citing *Sec. & Exch. Comm'n*

v. *Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) (internal citations omitted))).

Moreover, the Court found that Defendant had not waived his Fifth

Amendment privilege, where waiver might have counseled in favor of resuming

Defendant's deposition. (*Id.*).

On April 29, 2021, the Court held a telephone conference with the

parties to discuss Plaintiff's assertion that Defendant's deposition should be

reopened due to Defendant's alleged waiver of the attorney-client privilege.

(*See* Dkt. #52; Minute Entry for Apr. 29, 2021). The Court disagreed with

Plaintiff's assertion that Defendant had waived any attorney-client privilege and

declined to reopen Defendant's deposition. (Dkt. #56). The Court granted

additional discovery extensions on June 3, 2021 (*see* Minute Entry for June 3,

2021), and August 25, 2021 (Dkt. #65). On October 8, 2021, the Court entered

a briefing schedule for the parties' contemplated motions for partial summary

judgment. (Dkt. #75).

On November 11, 2021, the parties filed a stipulation of voluntary

dismissal with prejudice of Plaintiff's claim for malicious prosecution (Count II).

(Dkt. #76). The Court endorsed the stipulation the following day. (Dkt. #77).

Plaintiff filed his motion for partial summary judgment and supporting

documents on November 18, 2021. (Dkt. #78-81). Defendant filed his motion

for partial summary judgment and supporting documents on December 23,

2021, as well as his opposition to Plaintiff's motion. (Dkt. #84, 86). Plaintiff

filed his reply brief, as well as a memorandum of law in opposition to

Defendant's motion, on January 27, 2022.  (Dkt. #88, 89).  Defendant filed his reply brief on February 15, 2022.  (Dkt. #90).  Accordingly, both motions are fully briefed and ripe for the Court's consideration.

## DISCUSSION

**A.     Summary Judgment Under Fed. R. Civ. P. 56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[3]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477

---

[3]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In considering "what may reasonably be inferred" from evidence in the record, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cnty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010). "When evaluating cross-motions for summary

judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration." *Gustavia Home, LLC* v. *Hoyer*, 362 F. Supp. 3d 71, 78 (E.D.N.Y. 2019) (citing *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

**B.     Plaintiff's Anti-SLAPP Claim Under Nev. Rev. Stat. § 41.670(1)(c)**

    **1.     Plaintiff Is Entitled to Compensatory Damages and Attorney's Fees as a Matter of State Law**

Plaintiff asks the Court to find Defendant liable for damages under Section 41.670(1)(c), which provides that "[i]f the court grants a special motion to dismiss filed pursuant to [Nevada Revised Statutes §] 41.660 … [t]he person against whom the action is brought may bring a separate action to recover: [i] [c]ompensatory damages; [ii] [p]unitive damages; and [iii] [a]ttorney's fees and costs of bringing the separate action." Nev. Rev. Stat. § 41.670(1)(c). Under that section, "the sole precondition to a [SLAPP] defendant's entitlement to compensatory damages and attorney's fees is the district court's grant of a special motion to dismiss." *Adelson*, 417 F. Supp. 3d at 432. The parties do not dispute that the Nevada Court granted a special motion to dismiss Defendant's defamation action pursuant to Nevada's anti-SLAPP statute on January 30, 2020. (Pl. Br., Ex. 22 at 3). That ends the matter. Plaintiff is entitled to compensatory damages and attorney's fees as a matter of law. Accordingly, the Court grants Plaintiff's motion for summary judgment with respect to compensatory damages and attorney's fees.

## 2. The Court Denies Plaintiff's Motion for Summary Judgment with Respect to Defendant's Liability for Punitive Damages

Plaintiff also seeks summary judgment on the issue of Defendant's liability for punitive damages, such that only the amount of punitive damages to which Plaintiff is entitled would remain a live issue.[4]  Defendant argues that the record is devoid of evidence to support liability for punitive damages (Def. Br. 22-24), and that Plaintiff should be judicially estopped from taking the position that the defamation action was so meritless as to indicate Defendant's culpable intent (*id.* at 24-25).  For the reasons that follow, the Court finds that summary judgment is premature on the issue of Defendant's liability for punitive damages.

In order to make out a claim for punitive damages under Nevada law, Plaintiff must show by "clear and convincing evidence" that Defendant acted with "oppression, fraud, or malice, express or implied."  Nev. Rev. Stat. § 42.005(1).  "Oppression" in this context means "despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person."  *Id.* § 42.001(4).  "Fraud" means "an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another person."  *Id.* § 42.001(2).  "Malice, express or

---

[4]     Nevada law "requires that the liability determination for punitive damages against a defendant be bifurcated from the assessment of the amount of punitive damages, if any, to be awarded."  Nev. Rev. Stat. § 42.005(3).  This means that once the trier of fact determines that punitive damages should be awarded, it must conduct a "subsequent proceeding" to determine the amount.  *Id.*

implied" means "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." *Id.* § 42.001(3). As understood in the context of malice, "[c]onscious disregard" means "the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." *Id.* § 42.001(1). Conscious disregard "plainly requires evidence that a defendant acted with a culpable state of mind.... [A]t a minimum, [it] must exceed mere recklessness or gross negligence." *InjuryLoans.com, LLC* v. *Buenrostro*, 529 F. Supp. 3d 1178, 1188 (D. Nev. 2021) (citing *Countrywide Home Loans, Inc.* v. *Thitchener*, 124 Nev. 725, 743 (2008)).

Plaintiff conclusorily asserts that he is entitled to punitive damages because Defendant "acted with oppression and express malice in filing and maintaining his baseless lawsuit against Mr. Cheng" (Pl. Br. 11), but he falls far short of demonstrating the absence of a triable dispute of fact. Plaintiff provides no factual allegations in support of his conclusion, and certainly none sufficient for the Court to rule in his favor as a matter of law. Instead, Plaintiff offers the Nevada statutory definitions of "oppression" and "express malice," and reasons that because a SLAPP lawsuit is an "abusive 'meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights'" (*id.* (quoting *Stubbs* v. *Strickland*, 125 Nev. 746, 752 (2013))), then "[b]y definition, a prevailing defendant in a SLAPP suit should be entitled to punitive damages should they bring a SLAPP back action" (*id.*). While Plaintiff is correct that the Nevada Supreme Court has described

14

SLAPP lawsuits as "wasteful and abusive" (*id.* (quoting *John* v. *Douglas Cnty. Sch. Dist.*, 125 Nev. 746, 758 (2009)), this does not mean that a SLAPP suit plaintiff, by definition, acts with oppression, fraud, or malice, such that a prevailing defendant in a SLAPP lawsuit is automatically entitled to punitive damages. Were it otherwise, Nevada law would provide for a finding of punitive damages automatically upon the grant of a special motion to dismiss, in much the same way it provides for compensatory damages and attorney's fees.

Plaintiff argues that even if his eligibility for punitive damages were not automatic by virtue of Nevada law, Defendant must nonetheless be found liable for punitive damages because he "filed a baseless lawsuit … to silence [Plaintiff's] speech." (Pl. Br. 12). Plaintiff cites to four pieces of evidence as proof that Defendant had no motive in filing the Nevada defamation action other than to punish Plaintiff for speaking out against him, and Defendant responds to each.

- *First*, Plaintiff cites to the Dismissal Order, claiming that the Nevada Court dismissed Defendant's defamation claims because it found "no showing of any credible evidence to support the claims[.]" (Pl. Br. 13 (citing *id.*, Ex. 22)). Defendant responds that Plaintiff mischaracterizes the Order, which Defendant says concludes only that Plaintiff's statements were protected speech because (i) Plaintiff had shown, by a preponderance of the evidence, that he had made his statements without knowing falsity; and (ii) Defendant had failed to provide the requisite evidence of actual malice. (Def. Br. 24 (citing Pl. Br., Ex. 22 at 2-3)). More pointedly, Defendant argues that nothing about the Dismissal Order suggests that he acted with oppression or malice. (*Id.*)

- *Second*, Plaintiff argues that as a plaintiff in multiple other defamation lawsuits, Defendant was aware that

Nevada law would require him to demonstrate that Plaintiff's statements were made with actual malice, yet he proceeded to file the lawsuit knowing he lacked such evidence. (Pl. Br. 13; *see also id.* at 4 n.12 (listing other defamation cases filed by Defendant)). Again, Defendant demurs, arguing that this evidence "does not come close to proving [that Defendant] acted with culpable intent, particularly when the Court can take judicial notice of the fact that [Defendant] obtained a favorable outcome in many of these suits." (Def. Br. 24 (citing such cases)).

- *Third*, Plaintiff argues that his counsel in the defamation suit sent a letter to Defendant telling him that the suit was baseless, but that Defendant proceeded nonetheless. (Pl. Br., Ex. 19). Defendant observes wryly that "the same can be said of countless other plaintiffs," and argues that accepting the proposition that this fact alone establishes culpable intent would result in punitive damages being awarded as a matter of course, without any proof of harm whatsoever. (Def. Br. 24).

- *Fourth* and finally, Plaintiff argues that Defendant reviewed — and approved of — the complaint in the defamation suit against Plaintiff prior to its filing (Pl. Br., Ex. 1 ("Pl. Dep.") at 16:20-17:7, 107:4-7). Defendant counters that he was legally obligated to review the complaint prior to its filing. (Def. Br. 24).

Separately, Defendant argues that Plaintiff should be judicially estopped from arguing that Defendant's pursuit of the defamation action indicates his culpable intent. (Def. Br. 24-25). In his motion for attorney's fees before the Nevada Court, Plaintiff had argued that the case "required nuanced discussion of defamation and Anti-SLAPP issues and involved a complex factual background" requiring "attorneys intimately familiar with defamation and Anti-SLAPP issues." (Dkt. #1, Ex. 4 at 17). According to Defendant, those arguments are clearly inconsistent with Plaintiff's position in the instant

dispute that Defendant "knew" the defamation action was meritless, and thus allowing Plaintiff "to derive an unfair advantage from his about-face … would be patently unfair to" Defendant.  (Def. Br. 25).

The Court need not determine whether Plaintiff is judicially estopped from presenting this argument because, at a minimum, it is clear that there exists a material factual dispute as to whether Defendant acted with the requisite malice in filing his defamation action against Plaintiff.  Viewing the evidence in the light most favorable to Defendant, as the party opposing summary judgment, a rational trier of fact could reasonably find that Defendant did not act with "oppression, fraud, or malice, express or implied." *See* Nev. Rev. Stat. § 42.005(1).  As above, much of Plaintiff's evidence marshaled in support of summary judgment on this point merely goes to the fact that a lawsuit was filed and subsequently dismissed.  To grant summary judgment for Plaintiff on this meager showing would dilute the Nevada law requiring a finding of intent.  Plaintiff's motion is therefore denied to the extent it seeks summary judgment on the issue of Defendant's liability for punitive damages.

### C.   The Court Denies Defendant's Motion for Partial Summary Judgment

Switching from defense to offense, Defendant claims that *he* is the one entitled to summary judgment on the issue of damages, arguing in particular that: (i) Plaintiff should be precluded from introducing evidence of his claimed compensatory damages because he never disclosed his damages calculations or supporting documents, despite Defendant's multiple requests (Def. Br. 16-18);

(ii) even if Plaintiff were permitted to introduce such evidence, he lacks standing to recover his claimed "business damages" (*id.* at 18-21); and (iii) the record is devoid of evidence to support an award of compensatory damages (*id.* at 19-21).  Further, Defendant argues that Plaintiff is only entitled to attorney's fees and punitive damages if he is entitled to compensatory damages; because Defendant believes Plaintiff is not entitled to the latter, he argues Plaintiff is foreclosed from receiving the former.  (*Id.* at 21-25).

Defendant's arguments miss the mark, as the questions he presents — whether and to what extent Plaintiff is permitted to present certain evidence of his damages, and the amount of damages (if any) to which Plaintiff is entitled — are irrelevant to the question central to the instant cross-motions for partial summary judgment: whether Defendant is liable for damages of any type.  As the Court has already determined that (i) Plaintiff is entitled to compensatory damages and attorney's fees as a matter of state law, and (ii) a genuine dispute of material fact exists as to Plaintiff's eligibility for punitive damages, the Court rejects the proposition that Defendant is entitled to summary judgment on the issue of damages.  For the sake of completeness, however, the Court addresses each of Defendant's arguments in turn.

*First*, Defendant notes that Federal Rule of Civil Procedure 26 requires "each party to disclose, as part of its initial disclosures during discovery, a 'computation of each category of damages' claimed."  (Def. Br. 15 (quoting *Agence France Presse* v. *Morel*, 293 F.R.D. 682, 683 (S.D.N.Y. 2013) (citing Fed. R. Civ. P. 26 (a)(1)(A)(iii))).  It also requires a party to disclose "the documents or

other evidentiary material" "upon which each computation is based."  Fed. R. Civ. P. 26(a)(1)(A)(iii); *see also Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("[B]y its very terms Rule 26(a) requires … a 'computation,' supported by documents.").  While it is true that Plaintiff has failed to provide a calculation of damages, he disclosed the nature of his claimed damages in his initial disclosures and in his deposition.  (*See* Dkt. #84-5 (Plaintiff's Initial Disclosures) (noting that Plaintiff suffered damages in the form of "lost business opportunities," "harassment by [Defendant] and his compatriots," and "lost opportunities as a result of the diversion of time and financial resources," and adding, "The damages are yet to be calculated."); Pl. Dep. 89:9-92:12 (discussing personal and business injuries); *id.* at 30:5-32:8 (discussing loss of business); *id.* at 88:11-89:19 (discussing lost business opportunities); Def. Br., Ex. 5, at III (discussing categories of claimed damages); Def. Br., Ex. 6 (discussing basis of damages)).  *See also Funk* v. *Belneftekhim*, No. 14 Civ. 376 (BMC), 2020 WL 7642868, at *6 (E.D.N.Y. Dec. 23, 2020) (noting that Rule 26 requires disclosure of a litigant's theory of damages and observing that "defendants did not need a computation to determine whether plaintiffs have sustained damage; the claims do not require a set amount of damage.  But defendants did need to know the theory of damage.").

To be sure, Plaintiff's refusal to provide a numerical calculation of his damages may preclude him from suggesting a specific figure to a trier of fact in a later stage of litigation, or from relying upon certain evidence to demonstrate the extent of his damages.  *See Mohr* v. *Sec. Credit Servs., LLC*, No. 14 Civ. 981

(MAD) (CFH), 2016 WL 6638198, at *6 (N.D.N.Y. July 6, 2016) (concluding that "plaintiff may decline to provide a numerical calculation," but if so, "he will not be permitted to introduce or suggest to the trier of fact a specific figure as to his nonpecuniary damages").  Significantly, however, Plaintiff's failure to provide a damages calculation does not immunize Defendant from liability for damages.  To review, whether and to what extent Plaintiff is permitted to present certain evidence of his damages is irrelevant to the issue of whether Defendant is liable for damages.  And, as described above, that question is answered conclusively in the affirmative by state law.

Second, Defendant argues that Plaintiff lacks standing to recover his claimed "business damages."  (Def. Br. 18-21).  Defendant observes that although Plaintiff testified that Defendant's actions caused "his" hotel and his media businesses to suffer losses (id. at 18 (citing Pl. Dep. 30:5-32:8, 36:14-24, 85:15-86:22)), Plaintiff also attested that he does not own or operate that hotel (id. (citing id., Ex. 4 at ¶ 32)).  Defendant argues that under both Nevada law and federal law, a party generally has standing to assert only its own rights and cannot raise the claims of a third party not before the Court.  (Id. at 18-19 (citing Beazer Homes Holding Corp. v. Dist. Ct., 128 Nev. 723, 730-31 (2012); Levin v. American Document Servs., LLC, 838 F. App'x 788, 791-92 (2d Cir. 2020) (summary order))).  Plaintiff rejoins that he is not seeking to recover on behalf of the hotel — rather, he is seeking to recover for injury to his business and professional reputation.  (Pl. Reply 2).  While acknowledging that there is

merit to Plaintiff's argument, the Court declines to resolve this issue at this stage of the litigation.

*Third*, Defendant argues that the record is devoid of evidence to support an award of compensatory damages.  (Def. Br. 19-21).  However, as discussed above, the sole precondition to a SLAPP defendant's entitlement to compensatory damages is the district court's grant of a special motion to dismiss.  Nev. Rev. Stat. § 41.670(1)(c).  Nevada law does not require Plaintiff to provide any additional evidence at the liability phase.  For all of these reasons, the Court rejects Defendant's arguments and denies his motion for partial summary judgment.

## CONCLUSION

For the reasons set forth in this Opinion, Plaintiff's motion for partial summary judgment is GRANTED IN PART — on the issue of liability for compensatory damages and attorney's fees — and DENIED IN PART — on the issue of liability for punitive damages.  Further, Defendant's motion for partial summary judgment is DENIED.  The parties are directed to confer regarding next steps in this case and to submit a joint letter with their proposals on or before **October 4, 2022**.  The Clerk of Court is directed to terminate the motions at docket entries 78 and 83.

SO ORDERED.

Dated:     September 13, 2022
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge